## STILES et al. v. UNION TERMINAL CO.
### No. 10592.

Court of Civil Appeals of Texas. Dallas.
April 5, 1930.

Rehearing Denied May 17, 1930.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellants.

Robertson, Robertson & Payne and David T. Searls, all of Dallas, for appellee.

JONES, C. J.

Appellants, Mrs. Gertrude W. Stiles joined by her husband, Marshall F. Stiles, filed suit

in a district court of Dallas county to recover damages from appellee, Union Terminal Company, a corporation, for personal injuries to Mrs. Stiles, and from a judgment in favor of appellee, appellants have appealed. This is the second appeal in this case. Stiles et al. v. Union Terminal Co., 1 S.W.(2d) 947. The term "appellant," as used herein, will apply to Mrs. Stiles. Appellee maintains and operates the Union Depot in the city of Dallas.

About 8 o'clock on the morning of December 20, 1924, appellant had occasion to go to said depot for the purpose of meeting her aged mother, who would arrive from Missouri for the purpose of a visit. The train on which the mother was traveling was scheduled to arrive at the depot at 7:05 a. m., but on telephone inquiry from appellant she was informed that the train was an hour late. Expecting the train to arrive at such time, appellant with her husband drove to the depot in their automobile, parked the car just north of the second entrance to the depot from the south, and appellant went to the information desk to again inquire about the train. She was informed that the train would not arrive before 10:05 a. m. and at once decided to return to her car and go home until near the time for the arrival of the train. December 20, 1924, was on Saturday, and prior to this time Dallas was visited with rather a severe cold wave in which considerable snow and sleet had fallen on either the Thursday night or Friday morning previous. The result was that the streets and sidewalks had been covered with a layer of ice, and appellee's premises, including the entrances to the depot, were covered with ice and very slippery for those using them. On Friday morning, appellee's employees at the depot had swept off as much of the ice as could be done by such method on such entrances. As to the condition in respect to ice on the two entrances concerned in this case, the evidence is conflicting. There is no conflict in the evidence, however, that both Friday and Saturday were very cold days; the minimum temperature on Friday being 20 degrees above zero, and on Saturday morning 13 degrees above zero. The evidence is undisputed that when appellant left the entrance to the depot building on her return to the car, and after she had traveled approximately 15 or 20 feet, she slipped and fell on the walk of the second entrance to the depot building, breaking her ankle and badly wrenching the ligaments at and near the ankle.

Negligence is alleged on the theory that appellee failed to discharge its duty to those whose business necessitated their visiting appellee's depot, in that it failed to exercise ordinary care to maintain the approaches, sidewalks, or entrances and exits in connection with said depot, and the premises adjacent thereto, in a reasonably safe and proper condition so as not to expose the public generally, and these plaintiffs especially, who were compelled to use such entrances, to unnecessary danger while in the use of same, and specifically alleged that this unsafe condition of said premises was caused by appellee's permitting the snow, sleet, and ice to remain on the walks of the entrances to said depot. The allegations in this respect are full and complete and state a cause of action for damages on the alleged negligence.

Appellee specifically denied the alleged negligence, and alleged that the entrances were reasonably safe, in that, the sleet and ice had been removed from the walks and that this was especially true of the first entrance from the south, where, in addition to the removal of the snow and ice, a mat had been placed to permit safe entry to and exit from its depot, and affirmatively pleaded acts of negligence on the part of appellant as a bar to any recovery. This affirmative pleading may be epitomized as follows: (a) Failure on the part of appellant to exercise ordinary care in the matter of looking where she was going; (b) that if there was any ice on exit way No. 2, it was only in patches or spots and there was room to walk the distance of the exit way without stepping on any place rendered slippery because of ice, and that appellant carelessly failed so to walk; (c) failure to exercise ordinary care in her manner of walking; (d) failure to exercise ordinary care to focus her attention on the act of walking over the exit way; (e) failure to exercise ordinary care in the matter of choosing an exit way from the building, in that, the south exit way had been rendered safe by its being covered with a mat.

█ It thus appears that the issues joined by the parties are in reference to the condition as to ice on the two exit ways, and the care observed by appellant as she attempted to make her exit from the depot building. It was the duty of appellee to exercise ordinary care to see that the walks in question were maintained in a reasonably safe condition for those whose business carried them to its depot.

Three witnesses testified as to the condition of the two entrances, appellant and her husband on their behalf, and A. H. Harbison, a city policeman on duty in the vicinity of the depot, on behalf of appellee. Appellant testified positively that both of said entrances to the depot were covered with ice and thereby rendered dangerous to any one who was compelled to use such entrances, and denied that any mat covered the first entrance, but stated that the condition as to ice on the two entrances was practically the same. Harbison testified, in effect, that the entrances had been swept off by street brooms on Friday morning by employees of the depot, and that in addition to this the walk leading to the

south entrance had been covered by a mat, and that this mat was in place at the time of the injury. In addition he testified, in effect, that there were only small patches of ice in low places on the walk leading to the second entrance, but that there was ice on the walk in the immediate vicinity where appellant fell, and that "there is no question but what Mrs. Stiles slipped on some part of the ice and fell. * * *" This witness was standing near the door of the first entrance and did not see appellant until he was attracted by her outcry when she fell, when, he immediately ran to her, arriving about the time of her husband who had come from the car parked just north of the second entrance, the one appellant was using. No parking was allowed south of the second entrance.

Appellee did not offer any evidence as to the conduct and manner of walking of appellant, either on her going into the depot or on her attempted return. All of the evidence in this respect came from appellant and her husband. Appellant's testimony in this respect is: "I started out the door at the second entrance and I was in no hurry because I knew I had fully two hours to go home and get back to meet the train, and I had gone about six or seven steps out of the second door when my left foot slipped and I fell on my right foot and my right hip. My foot slipped on the ice. There was no rug and no ashes or sawdust or anything on the ice to walk on at any of the entrances so far as I remember. I was walking very carefully. I certainly did look where I was walking; I picked my steps and I was walking very slowly. * * * When I got out of the car I was facing South which was towards the South entrance and I did not see anything on that entrance. It looked to me just like the second entrance. When I got out of the car I was just a little bit to the right of the second entrance and I was about thirty feet from the South entrance. To have gotten to that first entrance or South entrance I would have had to have walked on the sidewalk down there and the sidewalk had ice on it. I did not see any ashes or cinders or anything of that kind thrown over any of the entrances. No one told me not to use that entrance and there were no signs up and the doors were open and I just walked in. I saw people going and coming out both of those entrances. * * * When I came out I was not looking where my husband was sitting in the automobile but was looking where I was going down the steps, or down the walkway; I was looking down in front of me instead of having my head up; I was looking down and picking out my steps. After going to the information desk my thought was to tell by husband that the train was two hours late and we had just as well go home and get our breakfast. I did not think I would have to hurry to tell him that. Naturally, the uppermost thought in my mind was to go and tell my husband what information I had gotten and to tell him that we would go on home and get breakfast. When I came out of the Union Terminal Building I did not look up to see if my husband was still parked there, because I knew he was parked out there, and I could see the car even before I approached the door. There was no time, no minute or second, or any part of a second from the time I came upon that place, that approach to the station, until the time I fell, but what I was looking right down where I was going and nowhere else. I walked very slowly and very carefully because it was an incline and, naturally, I would slip quicker on an incline."

Appellant also testified that her husband had been in bad health for some time previous to the accident and was only working a few hours in a day at that time, that he was suffering from nervous indigestion, and that she tried to persuade him not to go to the depot. The car they used was an open car. The husband testified that, "When Mrs. Stiles came out of the station she took five or six steps, about 15 feet probably, and she slipped and fell. She was walking very slowly, like anybody would on ice." He further testified that the second entrance was covered with ice and that he saw people walking over it and that they walked like they were walking on eggs.

Appellant admitted that she had testified previously by deposition that she was not certain about the absence of a mat on the walk to the first entrance of the depot, though she testified positively at the trial that no mat was down on such walk.

The case was tried to a jury and submitted on special issues. These issues and the answers thereto are as follows:

"No. 1: Was the defendant, Union Terminal Company, negligent in permitting its second exit way from the South to be in the condition in which it was on the occasion in question? Answer, 'Yes.'

"No. 2: Was such negligence, if any you have found in answer to special issue No. 1, a proximate cause of the injuries to plaintiff? Answer, 'Yes.'

"No. 3: On and immediately prior to the occasion in question was the plaintiff, Mrs. Gertrude Stiles, negligent in looking where she was going? Answer, 'No.'"

"No. 5: Were there non-slippery places upon which plaintiff, Mrs. Gertrude Stiles, could have walked in proceeding from the defendant's depot upon the occasion in question? Answer, 'Yes.'

"No. 6: Was the failure upon the part of plaintiff, Mrs. Gertrude Stiles, to walk upon such non-slippery places (If you have found under preceding issue No. 5 there were such non-slippery places where she could have

walked) negligence upon her part, as that term has been herein defined to you? Answer, 'No.' "

"No. 8: On the occasion in question was the plaintiff, Mrs. Gertrude Stiles, negligent under all the circumstances in using the second exit from the South of defendant's depot instead of using the first exit from the South of defendant's depot? Answer, 'No.' "

"No. 10: On the occasion in question was the plaintiff, Mrs. Gertrude W. Stiles, negligent in walking over the exit way from defendant's depot, in leaving the depot, in the manner in which she did walk? Answer, 'Yes.'

"No. 11: Was such negligence, if any you have found, a proximate cause of plaintiff, Mrs. Gertrude Stiles, slipping and falling upon the occasion in question? Answer, 'Yes.'

"No. 12: What sum, if paid now, would reasonably compensate the plaintiffs for the injuries sustained by the plaintiff, Mrs. Gertrude W. Stiles? Answer, '$7,000.00.' "

The verdict of the jury on these special issues, except as to special issues Nos. 10 and 11, are all sustained by evidence, and the findings thereon, except as to Nos. 10 and 11, are adopted as the findings of this court. The findings on issues Nos. 10 and 11 are the basis for the judgment entered.

 Appellant makes two major contentions in this case: (a) That the findings of the jury on special issues Nos. 10 and 11 are not supported by any evidence, and (b) that such findings are contradictory of findings on Nos. 3 and 6, and therefore the jury's verdict forms no basis for the judgment. These contentions are supported by appropriate assignments of error and propositions of law. The two will be discussed together.

By answers to special issues Nos. 3, 6, and 10, the jury's findings are to the effect that appellant was not negligent in the matter of looking where she was going, nor in the matter of a failure to walk upon nonslippery places, but that she was negligent in the manner in which she was walking. When considered in the light of the record, does the finding on No. 10, that she was guilty of negligence in the manner of walking, conflict with the finding on No. 3, that she was not negligent in the matter of looking where she was going, and the finding on No. 6, that she was not negligent because of a failure to walk upon nonslippery places? The term "manner of walking" means the mode or method used by her in doing the walking on the occasion in question. Did she walk carelessly in respect to whether she observed ordinary care for her own safety in the matter of looking where she was going? This phase of contributory negligence, embraced within the scope of the language of special issue No. 10, was specifically submitted in issue No. 3 and found in favor of appellant. Again, did appellant fail to observe ordinary care for her own safety, in that she did not step upon nonslippery places while she was walking. This phase of contributory negligence is embraced within the scope of the language of issue No. 10. The jury likewise found this issue in favor of appellant. Both of these phases of contributory negligence specifically submitted by the court in issues Nos. 3 and 6 we held on the former appeal were raised by the evidence of the policeman, A. H. Harbison, when he testified as to the amount of ice on the walk appellant was using when she was injured.

The only other phases of contributory negligence that can be comprehended by the language used in the submission of issue No. 10 are that appellant did not observe ordinary care for her own safety in the matter of the speed at which she was walking, or that her mind was not focused on the act of walking, but that her attention was directed elsewhere. If the facts and circumstances in evidence raised either of these issues, then it will be presumed that the finding of the jury on special issue No. 10 was directed to the issue or issues that the evidence raised, and not included in the scope of issues Nos. 3 and 6. We have searched the record in vain to find any evidence on either of the issues not included in the two issues previously submitted. Appellant testified in positive language that she walked very slowly and that at no time was her attention directed to anything other than the matter of walking on the ice-covered exit way. In this she is corroborated, as to the slowness of her walking, by the testimony of her husband. Harbison, the only other witness, gave no evidence on either of these issues, because he did not see appellant until she had fallen.

Appellants were interested parties, and the jury could disbelieve their testimony; but a failure to believe appellants' testimony would not even tend to establish any fact of contributory negligence, the burden of proving which rested upon appellant. A disbelief of the evidence of appellants as to the care observed in walking would still leave the presumption of law that appellant, on the occasion in question, was observing ordinary care for her own safety with no evidence tending to overcome such presumption, in respect to this matter. Salter v. G. H. & S. A. Ry. Co. (Tex. Civ. App.) 285 S. W. 1112; Gulf C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; Wells Fargo & Co. v. Benjamin (Tex. Civ. App.) 165 S. W. 120; Id., 107 Tex. 331, 179 S. W. 513. It necessarily follows that, in so far as issue No. 10 is raised by the evidence, the jury made specific findings contrary to the finding on No. 10, and that in so far as such issue comprehended matters not within the scope of special issues Nos. 3 and 6, such finding has

no support in the evidence, and that the assignments of error in reference thereto must be sustained.

We suggest to the trial court that if the evidence as to the defensive matters of contributory negligence at another .trial is the same as it was at this trial, appellee's defense of contributory negligence is submitted in special issues Nos. 3, 6, and 8.

Reversed and remanded.