IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 8, 2002 Session

# HARPER-WITTBRODT AUTOMOTIVE GROUP, LLC v. SAM TEAGUE, ET AL.

**Direct Appeal from the Chancery Court for Dickson County**
**No. 7010-01     Robert E. Burch, Chancellor**

---

### No. M2001-02812-COA-R3-CV - Filed November 6, 2002

---

This is an appeal from an order of summary judgment enforcing an option to purchase clause in a lease for commercial property. The trial court awarded summary judgment to the plaintiff, finding it had exercised its option under the contract. We reverse summary judgment, finding a genuine issue of material fact as to the purchase price of the property.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

J. Thomas Martin, Nashville, Tennessee, for the appellants, Sam Teague and Sam Teague Chrysler, Inc.

Benjamin C. Regen, Dickson, Tennessee, for the appellee, Harper-Wittbrodt Automotive Group, LLC.

## OPINION

This cause of action requires us to interpret an option to purchase clause contained in a lease for commercial property. Tenant Harper-Wittbrodt Automotive Group ("Harper-Wittbrodt") and owner Sam Teague and Sam Teague Chrysler, Inc. ("Teague") entered into a five-year lease agreement beginning January 2, 1996, and ending on January 2, 2001. Paragraph 31 of the agreement contained an option to purchase the property at the end of the lease period, providing:

> Sixty (60) months following the execution date of this Agreement, Tenant shall have
> the right and option to purchase the premises, by giving written notice to Landlord
> of Tenant's intent to do so no later than ninety (90) days prior to the expiration of the
> initial term or any renewal term. The purchase price for the premises if the option

is exercised shall be the then fair market value of the premises payable in cash at closing. No rent shall be applied to the purchase price. Rent shall be prorated to date of closing, if applicable. Closing shall be held at a place in Dickson County, Tennessee, designated by Landlord, with any attorney's fee for such closing to be split between the parties. Landlord shall provide a good and valid Warranty Deed at closing. All other closing costs shall be paid by Tenant. Tenant may, at its option, pay all or any portion of the outstanding and unpaid principal and interest due by Landlord to the Underhills pursuant to the promissory note dated August 5, 1994 in the original amount of $500,000.00 by and between Landlord as maker and the Underhills as payee, including any extensions or renewals thereof (the "Underhill Note"). Any payments made by Tenant on the Underhill Note shall be credited against and reduce the next occurring lease payments due to Sam Teague Chrysler, Inc. set forth in paragraph 30(i) hereinabove and no further lease payments shall be due or payable to the Underhills as provided in paragraph 30(ii) hereinabove if the Underhill Note has been paid in full by Tenant. Landlord agrees that it shall not pledge, mortgage or otherwise encumber the premises during the term of this lease, including any renewals or extensions thereof, other than the encumbrance represented by the Underhill Note. If the parties cannot agree upon the fair market value, each shall obtain an appraisal from a duly certified appraiser, but such appraisals shall be based solely upon a comparable sales valuation approach and/or cost approach, and the income approach to valuation shall expressly not apply. The two appraisal amounts thus obtained shall be averaged to obtain a single amount, which shall be the purchase price unless either party declines to accept same within fifteen (15) days after receiving complete written copies of the appraisal reports. If either party declines to accept the price thus computed, he shall promptly notify the other party in writing and secure the services of a third appraiser. The value obtained by the third appraiser shall be averaged with the value of the other appraisal closest to the third appraisal and the amount so determined shall be the purchase price. In all events all appraisers shall be independent parties having no direct or indirect financial interest in either party or any affiliated entity and neither indebted to nor employed by either party or any other party affiliated with these parties. Any purchase price determined by appraisal or otherwise shall be reduced in amount by the fair market value of any and all leasehold improvements made to the premises by Tenant.

Paragraph 28 of the contract also included a Holdover provision which stated:

Should Tenant continue in possession after the end of the term herein with permission of Landlord, it is agreed that the tenancy thus created can be terminated by either party giving to the other party not less than thirty (30) days' written notice to expire on the day of the month from which the tenancy commenced to run. In so continuing, Tenant agrees to pay a monthly rental of TWELVE THOUSAND FIVE

HUNDRED AND 00/100 ($12,500.00) DOLLARS per month and to keep and fulfill all other covenants, conditions and agreements.

Paragraph 32 of the agreement provided conditions for renewal of the lease for additional five (5) year terms. The lease also contained a integration clause and required that any modification must be in writing and signed by both parties.

On September 25, 2000, Harper-Wittbrodt notified Teague of its intent to purchase the property and offered a purchase price $1,124,941.11 This amount reflects an average of two (2) appraisals obtained by Harper-Wittbrodt ($1,550,000 and $1,510,000), less $405,058.89 which Harper-Wittbrodt contends is the value of leasehold improvements. Teague rejected Harper-Wittbrodt's appraisals on October 12, and on October 17 requested documentation regarding the leasehold improvements. On November 14, Harper-Wittbrodt sent Teague basic information regarding the improvements. Teague requested more detailed information and, in December, Harper-Wittbrodt delivered additional documentation. Teague submits that this information was insufficient to determine the fair market value of the improvements. Throughout the month of December, Harper-Wittbrodt emphasized that it intended to purchase the property no later than January 2, 2001. Teague began contacting appraisers in November of 2000, but was unable to obtain appraisals of the property until April and May of 2001. These appraisals were for $1,950,000 and $1,800,000. Additionally, Teague's appraiser disagreed with the valuation of the leasehold improvements submitted by Harper-Wittbrodt, and stated that they were difficult to analyze because they seemed to include maintenance items and items of personal benefit that would not enhance the value of the property.

On January 2, 2001, Harper-Wittbrodt tendered $1,124,941.11 at a "closing" which Teague did not attend. On January 3, 2001, Harper-Wittbrodt filed a complaint against Teague to enforce the option to purchase. Harper-Wittbrodt moved for summary judgment on March 3, which the trial court awarded on June 28.

The judgment of the trial court orders specific performance pursuant to which:

(1) Teague was ordered to convey the property to Harper-Wittbrodt no later than forty-five (45) days from the entry of the order, the specific date to be provided by Harper-Wittbrodt's attorney to Teague's attorney no later than seven (7) calendar days prior. The court ordered Teague on that date to there and then execute, acknowledge and deliver to Harper-Wittbrodt a Warranty Deed conveying the property in fee simple, subject only to the liens and encumbrances arising from Dickson city and county real estate taxes due but not yet payable for the current year.

(2) The purchase price was determined to be $1,124,941.11, which Harper-Wittbrodt was ordered to deliver to Teague at the closing ordered above. The purchase price was to be reduced by:

(a) amounts necessary to discharge in full any liens in favor of the State of Tennessee;

(b) amounts necessary to pay the full indebtedness (principal plus interest) of the August 5, 1994, promissory note;

(c) sums necessary to discharge in full any liens other than the tax amounts noted     above;

(d) all sums paid by Harper-Wittbrodt to Teague between January 2, 2001, and the closing date;

(e) all sums paid by Harper-Wittbrodt to the holder of the Note between January 2, 2001, and the closing date;

(f) one-half of the closing agent's fee;

(g) the cost of preparing the Warranty Deed and a release of the Deed of Trust;

(h) the cost of filing the release of the Deed of Trust for registration in the office of the Register of Deeds;

(i) Harper-Wittbrodt's attorney's fees in the amount of $13,740.00.

(3) Harper-Wittbrodt was found not liable for rent for any period after January 2, 2001.

(4) Harper-Wittbrodt was found not liable for interest on any unpaid portion of the purchase price for any period after January 2, 2001.

(5) All court costs were taxed to Teague.

Teague's motion to alter or amend the judgment was denied, and this appeal followed.

### *Issues*

The issues presented by Teague on appeal to this Court, as we perceive them, are:

(1) Whether the trial court erred in determining that the lease agreement required that, in the event Harper-Wittbrodt exercised its option to purchase, the closing date would be January 2, 2001.

(2) Whether the court erred by awarding summary judgment regarding the valuations of the property and leasehold improvements.

Harper-Wittbrodt raises the additional issue of whether the trial court erred in setting the award of its attorney's fees, submitting that the award was too low.

### *Standard of Review*

The interpretation of a contract is a matter of law. ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999). We review the trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); ***Bowden v. Ward***, 27 S.W.2d 913, 916 (Tenn. 2000). Summary judgment is appropriate where there are no genuine issues regarding material facts of the cause of action, and the moving party is entitled to a judgment as a matter of law . Tenn. R. Civ. P. 56.04. In determining whether to award summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of the nonmoving party. ***Staples v. CBL & Assoc.***, 15 S.W.3d 83, 89 (Tenn. 2000). Summary judgment should be awarded only when a reasonable person could reach only one conclusion based on the facts and inferences drawn from those facts. ***Id.*** When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. ***Id.***

### *Establishment of Closing Date*

When a claim involves disputes concerning the interpretation of a contract, the court must construe the various provisions of the contract together, seeking to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language they employed. ***Guiliano***, 995 S.W.2d at 95. The option to purchase clause of this lease agreement provided:

> Sixty (60) months following the execution date of this Agreement, Tenant shall have the right and option to purchase the premises, by giving written notice to the Landlord of Tenant's intent to do so no later than ninety (90) days prior to the expiration of the initial term or any renewal term.

It is undisputed that Harper-Wittbrodt notified Teague of its intent to exercise this option within the proscribed time. What is disputed is whether the agreement required a closing date of January 2, 2001. Reading the agreement as a whole, we believe that it did not.

Harper-Wittbrodt contends that paragraph 21 of the lease, which provides, "[i]t is understood and agreed between the parties hereto that time is of the essence in all of terms [sic] and provisions of this Lease," combined with the fact that it acquired the right to purchase the property "[s]ixty (60) months following the execution date of [the] Agreement," establishes a closing date of January 2 should the option to purchase be exercised. Teague argues that the lease is silent as to the closing date, and that the agreement anticipates closing within a reasonable time. Teague further submits

that the issue of whether Teague acted reasonably to perform in a timely manner is an issue to be resolved by a finder of fact.

After reviewing the contract in its entirety, we find that the agreement did not establish a specific closing date. The plain language of the agreement provided that Harper-Wittbrodt would have the right to purchase the property sixty (60) months following the date of the lease, not before. A closing date prior to January 2, therefore, clearly was not anticipated by the parties. The clause providing the option to purchase also stipulated that no rent would be applied to the purchase price, and that rent would be prorated to the date of closing. Since Harper-Wittbrodt had no right to purchase the property before January 2, the proration provision could have applied only to rent sums paid for periods between January 2 and the closing date.

The lease agreement further established the valuation mechanism to be followed by the parties to determine the purchase price. This process is one which could reasonably be expected to take more than the ninety days between the time Harper-Wittbrodt's notice of intent was required and an anticipated closing date. The clause provided an opportunity for the parties to agree to a purchase price without appraisals, obtainment of an appraisal by each should they not agree, fifteen days for rejection of the other parties' appraisal, and, in the event of rejection, the securing of a third appraisal to be averaged with the closer of the previous two to reach an agreed upon price. The only stipulation of a time period within this valuation mechanism was that a party rejecting the other's appraisal must do so within fifteen (15) days after receiving written copies of the appraisal reports. The mechanism did not contemplate a precise time-table, nor did it stipulate that closing would occur within a defined period. The agreement did, however, provide for holdover tenancy. This provision reasonably would have applied to any period between the termination of the five-year lease and a closing date pursuant to the exercise of the option to purchase.

In light of the foregoing, we believe the agreement evidenced an intent to close within a reasonable period in anticipation of a potentially protracted valuation process. The determination of what would constitute a reasonable period in light of the circumstances is a matter to be determined by a finder of fact. We accordingly reverse summary judgment on this issue.

### *Property Valuation*

Harper-Wittbrodt maintains that there is no genuine issue of material fact regarding the value of the property. Harper-Wittbrodt's argument, as we perceive it, is that since a January 2 closing date was mandated by the agreement, appraisals obtained by Teague after January 2 are inadmissible as evidence of valuation. Harper-Wittbrodt contends that Teague is therefore estopped from contesting the value of property based on appraisals obtained after January 2. According to Harper-Wittbrodt's reasoning, the only appraisals therefore admissible to evidence the value of the property are those obtained before January 2 and introduced by Harper-Wittbrodt. In light of our holding on the issue of the closing date above, we reject this argument. Harper-Wittbrodt further contends that Teague acted unreasonably by not obtaining appraisals more promptly and by attempting to base the valuation on the income method of valuation specifically rejected by the lease. Harper-Wittbrodt

does concede, however, that "both of Teague's appraisers were in fact able to appraise the [r]eal [p]roperty without using the [d]ealership's confidential financial information," i.e., appraisals not based on the income approach to valuation. Whether Teague acted unreasonably under the circumstances is a matter for the trier of fact.

Finally, Harper-Wittbrodt submits that it followed the valuation procedures delineated in the agreement, while Teague did not. It appears to this Court, however, that neither party followed the agreed upon procedures. Harper-Wittbrodt submits that in obtaining two appraisals, averaging them, and submitting the average as the proposed purchase price, it merely anticipated a disagreement over the valuation. Whatever Harper-Wittbrodt intended, this was not the mechanism provided by the contract. The contractual provisions are stated above and do not need to be repeated here. It is sufficient to note that while this agreement clearly did not anticipate every pitfall, it did provide a mechanism which should have been followed by both parties in good faith.

Since we find that the lease agreement did not require a closing date of January 2, appraisals obtained by Teague after that date are admissible as evidence of the value of the property. The valuations should be based on the fair market value of the improved property based on the comparable sales valuation and/or cost approach, not on the income approach. This amount must be determined in accordance with the method prescribed in the lease agreement. A genuine issue of material fact exists as to this value.

Additionally, the agreement provided that the purchase price of the property would be the value of the property less the value of leasehold improvements made by Harper-Wittbrodt. The lease agreement unambiguously stipulated that such improvements shall be valued at the fair market value of the improvements. Fair market value is defined as "the fair or reasonable cash price for which the property can be sold on the market." ***Black's Law Dictionary*** 537 (5th ed.1979). This is not necessarily the cost of the improvements to Harper-Wittbrodt at the time the specific improvements were made. An issue of fact remains regarding the value of these improvements, without which the final purchase price cannot be ascertained. Summary judgment on the issue of the value of the property accordingly is reversed.

### *Award of Attorney's Fees to Harper-Wittbrodt*

This issue of the award of attorney's fees to Harper-Wittbrodt is pretermitted in light of the foregoing.

### *Conclusion*

We find that the option to purchase clause contained in the lease agreement in this case did not stipulate a particular closing date, but anticipated closing within a reasonable time. We further determine that genuine issues of material fact exist regarding the valuation of the property and the value of the leasehold improvements, both of which must be ascertained in order to arrive at the purchase price. We accordingly reverse summary judgment and remand for further proceedings

consistent with this opinion. Costs of this appeal are taxed to the appellee, Harper-Wittbrodt Automotive Group, LLC.

                                     _____

                                        DAVID R. FARMER, JUDGE