IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 22, 2004 Session

## JORDAN ASHTON DANELZ v. JOHN GAYDEN

**Direct Appeal from the Juvenile Court for Shelby County**
**No. N6141      Kenneth Turner, Judge**

**No. W2003-01649-COA-R3-JV - Filed August 17, 2004**

Mother and husband divorced.  In her complaint for divorce, mother stated that her son was born of their marriage.  Husband paid son's child support.  Upon reaching the age of majority, son filed a paternity action against alleged father.  Son relied upon mother's affidavit as proof of requisite sexual contact.  The alleged father filed a motion to dismiss for failure to state a claim arguing mother was judicially estopped from making the statements contained in her affidavit in light of her statements made in her divorce complaint.  The juvenile court granted the motion to dismiss.  For the following reasons, we reverse the decision of the trial court and remand for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Mitchell D. Moskovitz and Adam N. Cohen, Memphis, Tennessee, for the appellant, Jordan Ashton Danelz.

Andrew C. Clarke, Memphis, Tennessee, for the appellee, John Gayden.

### OPINION

On April 1, 1984, Mary D. Danelz (Mother) gave birth to Jordan Ashton Danelz (Jordan).  On April 26, 1995, Mother filed for divorce against R. Eugene Danelz (Husband).  In the complaint for divorce, Mother averred "[t]hat two children have been born of the marriage, to wit: Ashley Dian on December 3, 1978 and Jordan Ashton on April 1, 1984."  In their marital dissolution agreement, Mother and Husband agreed that Mother would have primary custody of the children and Husband would pay child support.

On November 14, 2002, Jordan filed a petition to establish parentage against John Gayden (Dr. Gayden).  Jordan requested that Dr. Gayden be required to pay child support from

April 1, 1984 through the present. In support of his petition, Jordan filed his affidavit which provided in pertinent part:

1. I am the Petitioner in the above referenced cause. I was born on April 1, 1984 to Mary D. Danelz (hereinafter "Mother").

2. Approximately nine (9) to ten (10) months prior to my birth, Mother was involved in a sexual relationship with Respondent, John Gayden. Mother has recently advised [me] that Respondent is my natural Father.

3. I bear a striking resemblance to Respondent, John Gayden, and I reasonably believe that Respondent, John Gayden, is my natural father.

Jordan also filed a motion for discovery and paternity testing of Dr. Gayden. Dr. Gayden then filed a motion to strike the Affidavit of Jordan because it contained information not within Jordan's personal knowledge and that the information relied upon is testimony from his mother who is judicially estopped from denying Husband's paternity because of statements she made in the divorce action. Dr. Gayden then filed a motion to dismiss Jordan's petition to establish paternity for failing to state a claim for which relief can be granted. Jordan subsequently filed the affidavit of his Mother which provided in pertinent part:

1. I am the mother of the Petitioner, Jordan Danelz, in above referenced cause.

2. Approximately nine (9) to ten (10) months prior to Petitioner's birth, I was involved in a sexual relationship with Respondent, John Gayden.

3. Respondent, John Gayden, has admitted to me that he is the biological father of Petitioner, Jordan Danelz.

4. Petitioner bears a striking resemblance to Respondent, John Gayden.

Dr. Gayden then filed a motion to strike Mother's affidavit, supplemental response to Jordan's motion for paternity testing, and supplemental brief in support of his initial motion to dismiss for failure to state a cause of action for which relief can be granted.

The juvenile court heard oral argument on Dr. Gayden's motions to dismiss on February 19, 2003, and April 17, 2003. At the conclusion of the April 17, 2003 hearing, the juvenile court sustained Dr. Gayden's motions to dismiss from the bench, which was converted into sustaining a motion for summary judgment by considering the affidavits of Mother and Jordan. On May 23,

2003, Jordan filed his notice of appeal.  On June 24, 2003, the juvenile court entered the final order memorializing its April 17th ruling.  In its order, the juvenile court took judicial notice of the pleadings from the Divorce action between Mother and Husband.

## Issues Presented

Jordan raises the following issues, as we restate them, for review by this Court:

1.      Whether the trial court erred by granting Dr. Gayden's motion to dismiss Jordan's petition.

2.      Whether the trial court erred in refusing to order genetic paternity testing.

## Standard of Review

As the juvenile court considered the affidavits of Jordan and Mother, we will review this case under the summary judgment standard of review.  *Chance v. Gibson*, 99 S.W.3d 108, 109 (Tenn. Ct. App. 2002).  As this Court stated in *Mills v. Wong*, W2002-02353-COA-R3-CV, 2003 WL 22768781, at *1-2 (Tenn. Ct. App. Nov. 21, 2003):

> This Court must decide whether it was error for the trial court to award summary judgment to the Defendant[].  Summary judgment should be awarded when the moving party can demonstrate that there are no genuine issues regarding material facts and that it is entitled to judgment as a matter of law.  Tenn. R. Civ. P. 56.04; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).  Mere assertions that the non-moving party has no evidence does not suffice to entitle the moving party to summary judgment. *McCarley*, 960 S.W.2d at 588.  The moving party must either conclusively demonstrate an affirmative defense or affirmatively negate an element which is essential to the non-moving party's claim.  *Id.*  If the moving party can demonstrate that the non-moving party will not be able to carry its burden of proof at trial on an essential element, summary judgment is appropriate.  *Id.*

> This Court reviews an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court.  *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).  In determining whether to award summary judgment, we must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of the non-moving party.  *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000).  Summary judgment should be awarded only when a reasonable person could reach only one conclusion based on the facts and inferences drawn from those facts.  *Id.*  If there is any doubt about

whether a genuine issue of material fact exists, summary judgment should not be awarded. *McCarley*, 960 S.W.2d at 588.

*Mills*, 2003 WL 22768781, at *1-2.

## **Analysis**

Jordan argues that the trial court erred by sustaining Dr. Gayden's motion to dismiss. In its final order of dismissal, the juvenile court stated:

1.  Respondent's Motion to Take Judicial Notice of the Pleadings is granted;

2.  Respondent's Motion to Strike the Affidavit of Jordan Ashton Danelz is granted;

3.  Respondent's Motion to Strike the Affidavit of Debbie Danelz is granted;

4.  Petitioner's Motion for Paternity Testing is denied;

5.  The Petition to Establish Paternity filed by Jordan Ashton Danelz is dismissed.

Further, at the conclusion of the April 17, 2003 hearing, the juvenile court stated, in relevant part:

This has certainly been one that I've heard about and read the various things that you've submitted. And frankly, once I understood - - and it took me a while to understand your argument. But once I understood and I read your position, Counselor, about that judicial estoppel, well I'm having some difficulty in getting it, even with the information and the case and everything else that the law has subject to this . . . .

I don't see how we're going to get around the young man's ability to - - yes, he can file, and he's filed. But how is he going to prove? And I don't - - I'm agreeing with his position on the mother's need or the putative father or some man. Those are the only - - to my opinion, the only persons that can make that requisite and assertion that the necessary sexual contact took place.

. . . .

I find that he has - - that there has not been any proof or documentation that would allow him to go forward if the mother's affidavit is - - which I'm ruling against that.

-4-

> That's trying to come in the back door, in my opinion, once you can't come in through the front. That affidavit - - that was the last motion.
>
> I'm sustaining that motion where I'm not allowing that affidavit in of the mother stating that the father, the putative father, has made these statements to her. And once I dispose of that and in light of the mother's inability to make a statement because of the judicial estoppel, then I don't see that there's any way for him to go forward.

It appears that the juvenile court struck the affidavit of Jordan because it contained inadmissible hearsay or information not within his personal knowledge. It also appears that the juvenile court struck Mother's affidavit because she was judicially estopped from making statements contrary to which she had already sworn in the divorce proceeding. Without these affidavits, the juvenile court found no basis to require a paternity test or grant Jordan's petition to establish paternity against Dr. Gayden.

This Court recently addressed an issue similar to this case in *Chance v. Gibson*, 99 S.W.3d 108 (Tenn. Ct. App. 2002). In *Chance*, Ms. Leonard had a daughter while she was married to Mr. Chance. *Chance*, 99 S.W.3d at 110. Ms. Leonard and Mr. Chance divorced and Ms. Leonard sought child support from Mr. Chance, which was ordered by the trial court. *Id*. Upon reaching the age of majority, daughter and Ms. Leonard brought a paternity action against Mr. Gibson seeking to establish his paternity and child support. *Id*. at 109 Mr. Gibson filed a motion to dismiss the action against him, arguing that Ms. Leonard and her daughter were judicially estopped from asserting paternity against Mr. Gibson when Ms. Leonard sought and received support from Mr. Chance. *See id*. at 109-10. The trial court granted Mr. Gibson's motion and Ms. Leonard and her daughter appealed. *Id*. at 109. On appeal, we first noted that "*Shell v. Law*, 935 S.W.2d 402 (Tenn. Ct. App. 1996), makes it clear that there is no longer an almost irrebuttable presumption that a child born to a married couple is presumed to be a product of their union, but may be found - - if the proof warrants - - to be the child of a third party." *Id*. As for Ms. Leonard's petition, we affirmed its dismissal by stating "that she is judicially estopped, in light of her pleadings in the petition seeking support, to contend that Mr. Gibson is the father of the child." *Id*. at 110. As for the daughter's petition against Mr. Gibson, we held that she was not estopped as she was a minor at the time of the divorce proceeding and not a party to that proceeding. *Id*. at 111. As a result, we reversed the trial court's dismissal of the daughter's claim and remanded for a paternity test to determine if Mr. Gibson was the father. *Id*. at 111-12.

Like the daughter in *Chance*, Jordan was a minor at the time of the divorce proceeding and was not a party to that proceeding. As a result, Jordan is not judicially estopped from bringing a petition against Dr. Gayden. The remaining question is whether Jordan has sufficient evidence to overcome Dr. Gayden's motion to dismiss for failure to state a claim for which relief can be granted, which was, in effect, converted into a motion for summary judgment as the trial court considered Jordan's and Mother's affidavits. The answer to that question depends upon whether Jordan may rely upon the affidavit of his Mother.

The trial court found that Mother was judicially estopped from making the statements contained in the affidavit. This Court has defined the doctrine of judicial estoppel as "where one states on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he will not be permitted to deny that fact in subsequent litigation, although the parties may not be the same." *Melton v. Anderson*, 222 S.W.2d 666, 669 (Tenn. Ct. App. 1949). While Mother swore in her divorce complaint that Jordan was born of the marriage between her and her Husband, the statements contained in her affidavit do not deny that fact. Rather, her statements are based upon her personal knowledge of her relationship with Dr. Gayden and his appearance. Further, unlike the estopped mother in *Chance*, Jordan's Mother is not a party to the present proceeding but is rather an affiant making statements about matters not within Jordan's personal knowledge. As a result, the decision of the juvenile court to strike Mother's affidavit is reversed. Additionally, the decision of the juvenile court to grant Dr. Gayden's motion to dismiss is reversed.

Jordan also raises the issue of whether the trial court erred in refusing to require Dr. Gayden to submit to a genetic test to determine Jordan's parentage. Tennessee Code Annotated § 24-7-112 (2000) governs tests to determine parentage and provides, in relevant part:

> In any contested paternity case, . . . the court, . . . shall order the parties and the child to submit to genetic tests to determine the child's parentage upon the request of any party if the request is supported by an affidavit of the party making the request:
> (I) and such affidavit: Alleges paternity, and sets forth facts establishing a reasonable possibility of the requisite sexual contact between the parties; . . . .

Tenn. Code Ann. § 24-7-112 (a)(1)(A). Jordan's affidavit accompanied by his Mother's affidavit alleges a "reasonable possibility of the requisite sexual contact" between Mother and Dr. Gayden. As a result, the decision of the juvenile court denying Jordan's request for paternity testing is reversed and this case is remanded for Jordan and Dr. Gayden to submit to a paternity test.

## Conclusion

In light of the foregoing, we reverse the juvenile court's dismissal of Jordan's petition to establish parentage and remand the case for administration of a paternity test. Costs of this appeal are taxed to the Appellee, John Gayden, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-6-