**IN THE SUPREME COURT OF TENNESSEE**
**AT KNOXVILLE**

**FILED**

**March 20, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| ANITA GAYLE STAPLES and GARLAND B. STAPLES, | ) | **FOR PUBLICATION** |
| | ) | **Filed:** March 20, 2000 |
| Plaintiffs/Appellants, | ) | |
| | ) | HAMILTON COUNTY CIRCUIT |
| v. | ) | |
| | ) | Hon. Samuel H. Payne |
| | ) | |
| CBL & ASSOCIATES, INC., | ) | |
| PROFFITTS FOR WOMEN, INC., | ) | |
| and ERMC LP, d/b/a RUSSELL | ) | No. E1997-00033-SC-R11-CV |
| SECURITY SERVICES, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

FOR PLAINTIFFS/ APPELLANTS
Jere Franklin Ownby, III
Law Offices of Peter G. Angelos, P.C.
Knoxville, TN

FOR DEFENDANTS/ APPELLEES
Joe E. Manuel
Manuel & James
Chattanooga, TN

N. Mark Kinsman
Baker, Kinsman & Hollis
Chattanooga, TN

Lex A. Coleman
Richard R. Ruth & Associates
Chattanooga, TN

# OPINION

REVERSED AND REMANDED.                    DROWOTA, J.

In this case we decide the liability of a shopping mall, its security company,

and one of its anchor stores to a customer who was abducted on mall premises. In deciding this issue we apply the reasoning and law set forth in McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891 (Tenn. 1996), which is controlling in cases dealing with the duty of care owed by premises owners or occupiers to protect customers from the criminal acts of third parties committed on their premises. Here, the plaintiff was abducted from inside a mall and forced to drive with the perpetrator until she finally escaped. She now seeks recovery against the mall, its security company, and one of its anchor stores based on negligence for failure to implement and maintain adequate security and to otherwise protect her from being abducted. The defendants maintain that they owed no duty to this plaintiff, but that even if they did, the plaintiff cannot recover because she was at least fifty percent at fault for causing her injuries. The trial court granted summary judgment in favor of the defendants and the Court of Appeals affirmed. We have determined that the harm suffered by the plaintiff was foreseeable and that the defendants owed her a duty of care. Furthermore, we conclude that reasonable minds could differ on the reasonableness of the plaintiff's actions in confronting a known risk and the extent of her fault, and therefore remand the cause so that the issue of comparative fault can be decided by a jury. Accordingly, the decision of the Court of Appeals is reversed and the cause is remanded to the trial court for a trial consistent with this opinion.

**FACTUAL BACKGROUND**

1

The plaintiff,[1] Anita Gayle Staples, is a resident of Chattanooga and was 43 years old when the incident giving rise to this suit occurred. At around 4:30 p.m. on May 18, 1993, Ms. Staples took her truck to the Sears automotive center at Hamilton Place Mall to have the wheels aligned. After learning that her car would not be ready until 6:00, Ms. Staples decided to shop in the mall until the work was completed. She began browsing in the Sears lingerie department when she noticed the presence of an "exceptionally groomed" man standing nearby. Assuming the man was accompanied by a woman shopping in the department, Ms. Staples did not find anything out of the ordinary about his presence.

Ms. Staples left Sears to go to Morrison's Cafeteria, still within the mall, to eat. On her way, she passed an AT&T store and noticed the same man she had seen at Sears. He appeared to be looking at telephones, although she thought she saw him looking at her. Still unconcerned, Ms. Staples proceeded to Morrison's Cafeteria. In the restaurant, she observed the man a third time, when he leaned over a partition and peered at her while she was eating. Rattled by the encounter, she immediately left Morrison's.

Ms. Staples next went to Proffitts department store. After browsing in the dress department for about ten minutes, she became aware of the presence of the same man, who was standing about six feet from her. Looking at Ms. Staples, the man pulled a dress from a rack and asked, "Isn't this pretty?" At this

---

[1] Ms. Staples' husband, Garland B. Staples, is also a plaintiff in this suit.

point Ms. Staples was convinced that he was following her. Attempting to conceal her fear, she ignored the man and continued to shop, during which time she scanned the store for an employee. As she walked through the juniors department, the man appeared again and fanned money in his hands as he looked at Ms. Staples, causing her to feel as though he was propositioning her.

Following this encounter, Ms. Staples went directly to the Estee Lauder counter in Proffitts, where she knew the two employees working, Sheila Napier and Barbara Franca. She was noticeably frightened and shaking. When Ms. Franca asked what was wrong, Ms. Staples told the two women that a man was following her. They asked what the man looked like, and Ms. Staples described him. After a brief conversation about why the man might be following her, Ms. Napier looked at Ms. Franca and said "maybe we should call security." The two employees later testified that they offered to call security more than one time, but that Ms. Staples declined their offers. Ms. Staples disputes this, however, and maintains that neither employee asked her whether she wanted them to call security.

In any event, Ms. Franca then got off work and Ms. Staples continued to chat with Ms. Napier, who wanted to discuss a problem that she was having with her boyfriend. Ms. Staples said that she would go pick up her truck from Sears and then return to Proffitts to talk with Ms. Napier and to look for a picture frame. As she was leaving, Ms. Staples told Ms. Napier: "I'm not going to look back when I leave, please don't let this guy follow me." Ms. Napier responded: "I will watch. I won't let him follow you." According to Ms. Staples, Ms. Napier later told her that

3

she "got busy with a customer and ... forgot to watch."

Ms. Staples then left Proffitts without incident and went to J.C. Penney's to purchase a dress before walking toward Sears. On the way, she stopped at Lechter's, a household goods store, to purchase an apple corer. As she left Lechter's, Ms. Staples entered a common area in the mall and saw the man who had been following her sitting on a bench. Frightened, she tried to ignore the man and began walking briskly toward Sears. Ms. Staples testified that she felt some comfort knowing that she was going to get her truck and was going to "get out of there" and because she had reported the man to the employees at Proffitts, whom she assumed had "taken measures."

After retrieving her truck at Sears, Ms. Staples drove to the front of the mall and parked near the front door of Proffitts. She intended to shop not only at Proffitts, but elsewhere in the mall. Ms. Staples testified that she was comfortable returning to the department store because she didn't think the man would be there and because the Proffitts employees "knew who he was" and "should have been on the lookout for him."

Immediately inside the store entrance, Ms. Staples began browsing at some dress racks. Within minutes, the man who had been following her "suddenly appeared" in front of her. The man quickly moved behind Ms. Staples and pressed an object contained in a sack into her back. He then demanded that she "keep walking" and "not look back." He forced her through the parking lot and into her truck, where he revealed a gun and told her to drive. From the passenger

4

seat, the man continued to hold a gun on Ms. Staples and told her to "hit the interstate." She got on I-75 heading south and drove for several miles until he instructed her to exit and pull into a service station. During the ride he did not speak to Ms. Staples. Without exiting the car, he attempted to make a call from a pay phone at the station, but apparently could not get through. He then had Ms. Staples park at the edge of a parking lot at a nearby shopping mall, where they sat in silence for about forty-five minutes. He finally asked her to remove her slip, which he folded and placed in his lap.

The man instructed Ms. Staples to continue driving around the Dalton, Georgia area until he ordered her to pull into a Racetrack gas station, where he again placed a phone call from the truck. He next told her to fill the truck with gas and then to go into the store and pay, warning that if she did not return, he would kill her and "everybody in there." Inside the station, Ms. Staples informed the employees that she had been abducted. One of the employees went outside to find the man, but he had run away on foot. The Dalton, Georgia Police were called but could not locate the perpetrator.

Ms. Staples filed suit in the Circuit Court for Hamilton County against Proffitts, Inc. ("Proffitts"), CBL & Associates ("CBL"), the owner of the Hamilton Place Mall, and ERMC L.P. ("ERMC"), the company that provided security for the mall. In the complaint she alleged that the defendants were liable for her abduction because they had negligently failed to protect her and to implement and maintain an adequate security system in the mall.

5

On June 30, 1994, CBL filed a partial motion to dismiss with respect to certain named defendants. The trial court granted the motion on October 6, 1994. The remaining CBL defendants then filed for summary judgment, contending that the mall had no notice of an alleged stalker because neither Ms. Staples nor any Proffitts employee contacted mall officials or mall security about Ms. Staples' concerns. On March 6, 1997 the trial court granted summary judgment in favor of the CBL defendants for each claim asserted.

Proffitts and ERMC each filed a motion for summary judgment, on February 24, 1995 and March 7, 1995, respectively, asserting that they did not owe the plaintiff a duty because they could not have reasonably foreseen that Ms. Staples would act unreasonably by returning to the mall and encountering a known danger. On June 7, 1995, the trial court granted Proffitts' motion on the ground that Proffitts "had no knowledge of an imminent probability of the abduction of the plaintiff." However the court denied ERMC's summary judgment motion because it found that Ms. Staples had raised a question as to whether the company had implemented and/or maintained an adequate security system at the mall. The trial court then granted ERMC an interlocutory appeal pursuant to Tenn. R. App. P. 9, however the petition was denied by the Court of Appeals on May 20, 1996. ERMC's various other motions for relief were each denied. Finally, on January 13, 1997, the trial court granted summary judgment to all three defendants because it found that Ms. Staples was "at least fifty (50%) percent or more responsible for her own alleged abduction by returning to Proffitts after she had left."

6

The Court of Appeals affirmed the decision of the trial court granting summary judgment to each defendant, holding that

the Plaintiff unreasonably confronted the risk by returning to Proffitts and placing herself in harm's way. Further, in failing to advise ERMC LP security of the man sitting in the mall, but returning to Proffitts in her truck, the behavior in the manner in which the Plaintiff acted in light of all the surrounding circumstances, including the confronted risk, was unreasonable and attributed to at least fifty percent or more of fault in her abduction.

The intermediate court went on to hold that Ms. Staples failed to show that the defendants should have foreseen the probability of her abduction, and, therefore, the defendants did not owe her a duty of care.

We granted review to determine whether the Court of Appeals erred in finding that the defendants did not owe Ms. Staples a duty of reasonable care and that she was at least fifty percent at fault for her abduction.

**STANDARD OF REVIEW**

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. See Hunter v. Brown, 955 S.W.2d 49, 50-51 (Tenn. 1997); Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.03 provides that summary

7

judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, see Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. See Anderson v. Standard Register Co., 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. See Downen v. Allstate Ins. Co., 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. See Byrd v. Hall, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. See McCarley v. West Quality Food Serv., 960 S.W.2d 585, 588 (Tenn. 1998); Robinson v. Omer, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. See McCarley v. West Quality Food Serv., 960 S.W.2d at 588; Robinson v. Omer, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the

8

claim.[2]

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. See Robinson v. Omer, 952 S.W.2d at 426; Byrd v. Hall, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. See McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995); Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn. 1995).

## THE DUTY ISSUE

To bring a successful negligence claim, the plaintiff must establish each of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation. See White v. Lawrence, 975 S.W.2d 525, 529 (Tenn. 1998); McCall v. Wilder, 913 S.W.2d at 153. Our focus in this case is on the first element: the duty of care. Whether the defendant owed the plaintiff a

---

[2]A non-moving party may satisfy his or her burden by (1) pointing to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (2) by rehabilitating the evidence attacked in the moving party's papers, (3) by producing additional evidence showing the existence of a genuine issue for trial, or (4) submitting an affidavit explaining why further discovery is necessary as provided for in Tenn. R. Civ. P. 56.06. See McCarley v. West Quality Food Serv., 960 S.W.2d at 588; Byrd v. Hall, 847 S.W.2d at 215, n.6.

9

duty of care is a question of law to be determined by the court. See Rice v. Sabir, 979 S.W.2d 305, 309 (Tenn. 1998); Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993).

Duty is the legal obligation a defendant owes to a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm. See McClung v. Delta Square Ltd. Partnership., 937 S.W.2d at 894; McCall v. Wilder, 913 S.W.2d at 153. In assessing whether a duty is owed in a particular case, courts must apply a balancing approach, based upon principles of fairness, to identify whether the risk to the plaintiff was unreasonable. See Turner v. Jordan, 957 S.W.2d 815, 181 (Tenn. 1997). This Court has stated that a "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." McCall v. Wilder, 913 S.W.2d at 153; Rice v. Sabir, 979 S.W.2d at 308. The court must consider several factors in determining whether a risk is an unreasonable one, including:

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance of social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

> Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998); McCall v. Wilder, 913 S.W.2d at 153.

10

In McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, this Court considered what duty a premises owner or occupier owes to customers to protect them against the criminal acts of third parties occurring on the premises. Acknowledging that our decisions regarding the existence of a duty in negligence actions have consistently embraced a balancing approach, in McClung we set forth the following principles to be considered in determining duty in the context of third-party criminal acts:

> A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

In applying these guidelines, we reiterated that, consistent with our prior opinions dealing with the existence of duty, the foreseeability and gravity of harm must be balanced against the commensurate burden imposed on the business to protect against the harm. See McClung v. Delta Square, 937 S.W.2d at 902.

The defendants contend that they did not owe Ms. Staples a duty of care because neither Proffitts, the mall, nor the security company could have foreseen that Ms. Staples would be abducted because she did not alert security and she reentered the mall after leaving safely. Each defendant contends that Ms. Staples was in the best position to protect herself and that she has not established a prima facie case of negligence because she cannot establish that they owed her a duty

11

of care.

After applying the appropriate balancing test to the facts of this case, we disagree with the intermediate court's conclusion that the defendants did not owe Ms. Staples a duty of care because she failed to show that her abduction was foreseeable by the defendants.   Reviewing the facts in the light most favorable to Ms. Staples, which is appropriate in response to the defendants' motions for summary judgment, we conclude that the exchange between Ms. Staples and the two Proffitts employees triggered a duty on the part of Proffitts, the mall, and the security company to take reasonable steps to protect Ms. Staples from the abduction that occurred.

Ms. Staples informed the two Proffitts employees that she was being stalked.  She described her stalker to them, and was visibly shaken to the point of needing assistance in removing a credit card from her wallet.  Aware of the possible danger to Ms. Staples, one of the employees asked the other whether they should call security.  According to Ms. Staples, whose evidence we must accept as true, she did not decline the employee's offer to call security, nor did she instruct them to refrain from calling security, as the employees contend in their affidavits.  As Ms. Staples left the store, she said to one of the employees: "Now, I'm not going to look back when I leave, please don't let this guy follow me." The employee assured Ms. Staples that she would watch and would not allow her to be followed.  The employee, however, then became busy and forgot to watch her leave.   Moreover, the employee knew that Ms. Staples planned to return to the mall after retrieving her truck so that the two could discuss a relationship

12

problem the employee was experiencing.

This exchange put Proffitts on notice that Ms. Staples, a customer, was in danger of being abducted. There is also evidence in the record demonstrating that there were numerous incidents of crime on the premises in the months preceding Ms. Staples' abduction.[3] Accordingly, we conclude that the harm she encountered was foreseeable. Moreover, in examining the other factors relevant to this inquiry, it is clear that the gravity of the foreseeable harm was great and that alternative conduct on the part of the defendants, which at the least would have included calling security, was readily available and would not have unduly burdened the defendants. Based upon these facts, the intermediate court erred by holding that the defendants held no duty toward Ms. Staples. We hasten to add, however, that we express no opinion on whether the defendants breached

---

[3]Relying on the holding in McClung, Ms. Staples contends that persuasive in establishing a duty is evidence of the number of crimes that had occurred at Hamilton Place Mall prior to her abduction. In response to the defendants' motions for summary judgment, Ms. Staples introduced the affidavit of Larry Talley, an expert in security. After reviewing the records of the Hamilton Place Mall and the Chattanooga Police Department, Mr. Talley concluded that 286 criminal incidents, ranging in severity, had occurred at the mall in the fourteen months preceding Ms. Staples' abduction. He instructed that this number averages 20.42 criminal incidents per month during that period. Ms. Staples points out that based upon these figures, a duty should be established because in McClung, we recognized that 164 criminal incidents had occurred on the relevant premises within the seventeen month period preceding the plaintiff's injury, which produces an average of 9.66 incidents per month, significantly less than in the present case.

In McClung we declined to adopt the prominent "prior instances approach" employed in other jurisdictions, which focuses primarily upon evidence of prior incidents of crime on or near the defendant's premises to establish foreseeability and duty. (We rejected that approach because in our view it would result in the "first" victims of crime on a particular premises from being able to establish duty, while later victims could more easily establish foreseeability and duty on the part of the premises owner. Furthermore, the approach would raise a host of questions concerning how close in time and proximity the prior incidents of crime must be.) Nonetheless, we acknowledged that "[a]s a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of the defendant's premises." McClung v. Delta Square, 937 S.W.2d at 902. While this factor is in no way exclusive in determining the existence of duty, prior criminal acts will inevitably factor into the balancing approach applied by courts. We reiterate this point to emphasize that while the number of prior criminal incidents at Hamilton Place Mall is significant in determining the existence of a duty, it is only one factor to be weighed by courts and does not by itself establish a duty.

13

their duty of reasonable care to Ms. Staples.

## EXTENT OF PLAINTIFF'S FAULT

The defendants contend that even if they owed a legal duty to Ms. Staples, she is barred from recovering because her fault in causing the harm she encountered was equal to or greater than their fault because she unreasonably confronted a known risk. They point out that despite her awareness that she was being stalked by someone in the mall, Ms. Staples voluntarily returned to the mall after reaching the safety of her vehicle. Moreover, according to the defendants, Ms. Staples did not contact mall security or take similar steps to otherwise protect herself.

The Court of Appeals agreed with the defendants, holding that "the manner in which the Plaintiff acted in light of all the surrounding circumstances, including the confronted risk, was unreasonable and attributed to at least fifty percent or more of fault in her abduction." We conclude that reasonable minds could differ as to the reasonableness of her actions in confronting a known danger and the extent of her fault. Accordingly, the issue of her fault should have been decided by a jury.

In negligence cases, only after the element of duty is established does the comparative fault of the plaintiff come into play. See Coln v. City of Savannah, 966 S.W.2d at 42. If the defendant has plead the affirmative defense of the plaintiff's relative fault, the reasonableness of the plaintiff's conduct in confronting

14

a risk should be determined under the principles of comparative fault. See Perez v. McConkey, 872 S.W.2d 897, 905 (Tenn. 1994). If the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that her fault was equal to or great than that of the defendants, summary judgment in the defendant's favor may be granted. See Coln v. City of Savannah, 966 S.W.2d at 44.

Based upon the facts in this case, a plausible argument can be made that Ms. Staples was negligent in reentering the mall, under the circumstances, after making it safely to her car. On the other hand, reasonable minds might also agree that Ms. Staples' conduct was rational because she believed, as she contends in her deposition, that the Proffitts employees had contacted mall security about the stalker and that adequate measures to protect her had been taken. Because reasonable minds can differ on the reasonableness of Ms. Staples' actions and the extent of her fault, a jury should have decided the questions of fact relevant to this issue, and the Court of Appeals erred by finding that, as a matter of law, Ms. Staples was at least fifty percent at fault in causing her injuries.

## CONCLUSION

For the reasons herein stated we reverse the Court of Appeals's finding that the defendants did not owe the plaintiff a duty of care. Furthermore, we conclude that the grant of summary judgment in favor of the defendants was in error and therefore remand the case to the trial court for a jury trial consistent with this opinion.

15

_____
Justice Frank F. Drowota, III

**Concur:**

Anderson, C.J.
Birch, J., Byers, S.J.

Holder, J. - see separate concurring opinion

16

17