# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 3, 2005 Session

## ANGELA KAMILLE DRAPER, AS PARENT, SURVIVOR AND NEXT FRIEND OF BRYANNA FAITH DRAPER, DECEASED v. LARRY H. WESTERFIELD, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Sullivan County**
**No. C34189(M)     John S. McLellan, III, Judge**

---

**No. E2003-02381-SC-R11-CV - Filed October 12, 2005**

---

In this appeal, we must determine: (1) whether the defendant, a doctor, is immune from liability pursuant to Tennessee Code Annotated section 37-1-410(a) (1996) in connection with his review of a child abuse victim's medical records as requested by authorities investigating allegations of child abuse; (2) whether the defendant has a common law duty to report suspected child abuse; and (3) whether Tennessee Code Annotated section 37-1-401, *et. seq.* (1996) provides a private right of action for failure to report suspected child abuse. We conclude that immunity under Tennessee Code Annotated section 37-1-410(a) is afforded only to those who actually report harm. Because the determination of whether the defendant reported harm involves a genuine issue of material fact, the Court of Appeals correctly held that the trial court erred in granting summary judgment on this issue. We further conclude that by reviewing the victim's medical records, the defendant undertook a duty to use reasonable care in reviewing the records and reporting his findings and conclusions to the investigators. Finally, we hold that because the plaintiff did not assert a private right of action pursuant to Tennessee Code Annotated section 37-1-401, *et. seq.* in her complaint, the Court of Appeals erred in addressing the issue. Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part; Reversed in Part; Remanded to the Trial Court**

JANICE M. HOLDER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Andrew T. Wampler and Richard Mann Currie, Jr., Kingsport, Tennessee, for the Appellant, Larry H. Westerfield.

Kenneth D. Hale and Paul Raymond Wohlford, Bristol, Tennessee, for the Appellee, Angela Kamille Draper.

**OPINION**

On June 2, 2000, three-month-old Bryanna Draper ("Bryanna") died as a result of injuries inflicted upon her by her father, Daniel Lee Draper ("Mr. Draper"). Bryanna's mother, Angela Draper ("Mrs. Draper"), as parent, survivor, and next friend of Bryanna, brought suit against several defendants, including Dr. Larry Westerfield ("Dr. Westerfield"), a radiologist. The following facts relate to Mrs. Draper's claims against Dr. Westerfield.

In May 2000, Bryanna was admitted to Holston Valley Regional Medical Center for x-rays and a CT scan[1] of her brain. Mrs. Draper alleges in her complaint that various physicians opined that Bryanna's x-rays were "normal" and that they discharged Bryanna to her parents on May 14, 2000.

During the same time period, the Department of Children's Services ("DCS") began an investigation regarding possible child abuse of Bryanna. On May 15, 2000, Diane Stanley ("Ms. Stanley"), a DCS caseworker, contacted the hospital's radiology department and requested a second opinion regarding Bryanna's x-rays. An employee in the radiology department scheduled an appointment for Ms. Stanley with Dr. Westerfield for the following day.

Ms. Stanley and Detective Louis Elias of the Sullivan County Sheriff's Department met with Dr. Westerfield at the hospital and requested that he review the x-rays and CT brain scan as part of the investigation. Dr. Westerfield claims he informed Ms. Stanley and Detective Elias that he observed abnormalities including a small bifrontal subdural fluid collection or a hygroma[2] in the CT scan, an arm fracture, and a clavicle fracture. According to Dr. Westerfield, he further informed the investigators that he observed signs of possible abuse and that the parents were the likely abusers. Dr. Westerfield also claimed he told the investigators that he did not believe that the injuries resulted from mishandling by nurses at the hospital.

Ms. Stanley claimed that upon examining the CT scan, Dr. Westerfield stated that the report should represent that the scan was abnormal rather than normal but that the abnormality was not a cause for concern. According to Ms. Stanley, Dr. Westerfield opined that Bryanna's injuries could have occurred as a result of Bryanna's reaction to the hospital nurses' attempts to treat her. Ms. Stanley maintained that Dr. Westerfield never told her that Bryanna's injuries likely resulted from abuse by her parents. Ms. Stanley testified that if Dr. Westerfield had stated that he observed signs of child abuse, she would have removed Bryanna from her parents' custody. Ms. Stanley stated that her meeting with Dr. Westerfield was only one component of her investigation and that she continued with her investigation after their meeting concluded.

---

[1] During a computerized tomography (CT) scan, "[p]ictures of structures within the body [are] created by a computer that takes the data from multiple X-ray images and turns them into pictures on a screen." MedTerms Dictionary, http://www.medterms.com/script/main/art.asp?articlekey=2878 (last visited October 10, 2005).

[2] A "hygroma" is a "cystic tumor of lymphatic origin." Medline Plus Medical Dictionary, http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=hygroma (last visited October 10, 2005).

Mrs. Draper filed suit against Dr. Westerfield claiming that he had a duty to report his suspicions of Bryanna's abuse to the investigators. If Dr. Westerfield had reported this information, the investigators would have removed Bryanna from Mr. Draper's custody.

Dr. Westerfield filed a motion for summary judgment contending that Mrs. Draper failed to establish the required elements of medical malpractice because a physician-patient relationship did not exist between Dr. Westerfield and Bryanna and that Dr. Westerfield did not deviate from the applicable standard of care. Dr. Westerfield further maintained that Tennessee Code Annotated section 37-1-410 (1996) provided him with immunity. The trial court granted summary judgment to Dr. Westerfield. With regard to the medical malpractice claim, the trial court found that no physician-patient relationship existed between Dr. Westerfield and Bryanna. Recognizing that Mrs. Draper also alleged negligence, the trial court further found that a disputed issue of material fact existed as to whether Dr. Westerfield reported child abuse to the investigators. Regardless of the content of the information, however, the trial court held that Dr. Westerfield was entitled to immunity pursuant to Tennessee Code Annotated section 37-1-410 (1996) for cooperating with the investigators and providing information to them..

The Court of Appeals affirmed the trial court's judgment, finding that no physician-patient relationship had been established between Dr. Westerfield and Bryanna. The Court of Appeals further concluded that Tennessee Code Annotated section 37-1-401, *et. seq.* (1996), entitled "Mandatory Child Abuse Reports," creates a private right of action against one who fails to report suspicions of child abuse. The intermediate appellate court held that immunity under Tennessee Code Annotated section 37-1-410 (1996) attaches when a person reports suspected child abuse and not when he or she fails to do so. The Court of Appeals concluded that the content of the information that Dr. Westerfield provided to the investigators was a disputed issue of material fact and therefore reversed the trial court's grant of summary judgment on this issue. We granted review.

**ANALYSIS**

The trial court's decision to grant summary judgment is appropriate only if Dr. Westerfield demonstrated that no genuine issues of material fact existed and that he is entitled to judgment as a matter of law. See Tenn. R. Civ. P. 56.04; Penley v. Honda Motor Co., 31 S.W.3d 181, 183 (Tenn. 2000). We review the trial court's decision to grant summary judgment de novo with no presumption of correctness attached to the trial court's conclusions. See Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000). We also view the evidence in the light most favorable to Mrs. Draper, the non-moving party, drawing all reasonable inferences in her favor. See Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). The purpose of summary judgment "is to resolve controlling issues of law rather than to find facts or resolve disputed factual issues." XI Props., Inc. v. RaceTrac Petroleum, Inc., 151 S.W.3d 443, 446 (Tenn. 2004) (citation omitted). The primary issues underlying a motion for summary judgment are "(1) whether a factual dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a genuine issue for trial." Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn. 1993).

## A. Immunity

Dr. Westerfield maintains that irrespective of the causes of action alleged by Mrs. Draper, he is immune from liability pursuant to Tennessee Code Annotated section 37-1-410 as a result of his cooperation with investigators. The version of Tennessee Code Annotated section 37-1-410(a) (1996) in effect when the events subject to this lawsuit occurred provides that "[a] person reporting harm shall be presumed to be acting in good faith and shall thereby be immune from any liability, civil or criminal, that might otherwise be incurred or imposed for such action."[3] Under the plain language of the statute, a person who reports harm is immune from *all* civil and criminal liability that otherwise may arise from such action. Because Mrs. Draper's claims against Dr. Westerfield are based upon the doctor's conduct with regard to the investigation of child abuse claims, Dr. Westerfield is entitled to immunity if he "report[ed] harm" under the statute. See Tenn. Code Ann. § 37-1-410(a) (1996).

A "[r]eport of harm" is a "report filed under [section] 37-1-403." Tenn. Code Ann. § 37-1-401(3) (1996). Tennessee Code Annotated section 37-1-403(a) (1996) lists the circumstances under which a person is required to report suspected child abuse. According to this subsection,

Any person, including, but not limited to, any:

(1) Physician, osteopathic physician, medical examiner, chiropractor, nurse or hospital personnel engaged in the admission, examination, care or treatment of persons;

(2) Health or mental health professional other than one listed in subdivision (a)(1); [or]

. . . .

(8) Neighbor, relative, friend or any other person;

having knowledge of or called upon to render aid to any child who is suffering from or has sustained any wound, injury, disability, or physical or mental condition which is of such a nature as to reasonably indicate that it has been caused by brutality, abuse or neglect or which on the basis of available information reasonably appears to have been caused by brutality, abuse or neglect, shall report such harm immediately, by telephone or otherwise, to the judge having juvenile jurisdiction or to the county

_____

[3] The version of Tennessee Code Annotated section 37-1-410 (1996) in effect at the time of the events subject to this lawsuit contained only two subsections. Subsection (b) provided that "[a]ny person reporting under the provisions of this part shall have a civil cause of action for appropriate compensatory and punitive damages against any person who causes a detrimental change in the employment status of the reporting party by reason of the report." Tenn. Code Ann. § 37-1-410(b) (1996).

office of the department or to the office of the sheriff or the chief law enforcement official of the municipality where the child resides.

Tenn. Code Ann. § 37-1-403(a) (1996).

When read together, these statutes provide that immunity is afforded only to a person who actually reports harm.[4] The language of section 37-1-410(a) does not afford immunity to a person who issues a report that does not include a conclusion of child abuse. Cf. Conn. Gen. Stat. § 17a-101e(b) (2004) ("Any person, institution or agency which, in good faith, makes, or in good faith does not make, the report . . . shall be immune from any liability, civil or criminal, which might otherwise be incurred or imposed. . . ."); Manifold v. Ragaglia, 862 A.2d 292, 301 n.15 (Conn. 2004) (explaining that section 17a-101e(b) was amended to include the language "in good faith does not make" to extend immunity to those who, in exercising their professional judgment, conclude that no abuse occurred). Furthermore, the plain language of section 37-1-410(a) does not extend immunity to those who cooperate in an investigation by DCS or law enforcement officials. Cf. La. Child. Code Ann. art. 611A(1) (2004) (providing immunity to any person "who in good faith . . . cooperates in any investigation arising as a result of [a] report"); Mich. Comp. Laws § 722.625 (2005) (extending immunity to a person acting in good faith who "cooperates in an investigation"); N.C. Gen. Stat. § 7B-309 (1999) (affording immunity to anyone who "cooperates with the county department of social services in a protective services inquiry or investigation"); Tex. Fam. Code Ann. § 261.106(a) (1995) (providing immunity to a person acting in good faith who "assists in the investigation of a report of alleged child abuse").

---

[4] Dr. Westerfield contends that Tennessee Code Annotated section 37-1-410(a)(6) and (7) (2001) also afford him immunity. Subsection (a)(6) provides that

> [a] person furnishing a report, information or records as required or authorized under the provisions of this part shall have the same immunity and the same scope of immunity with respect to testimony such person may be required to give or may give in any judicial or administrative proceeding or in any communications with the department or any law enforcement official as is otherwise conferred by the provisions of this subsection upon the person who made the original report of harm.

Tenn. Code Ann. § 37-1-410(a)(6) (2001). Subsection (7) provides that

> [i]f the person furnishing a report, information or records during the normal course of such person's duties as required or authorized under the provisions of this part is different than the person originally reporting the harm, then the person furnishing such report, information or records shall have the same immunity and the same scope of immunity with respect to testimony such person may be required to give or may give in any judicial or administrative proceeding or in any communications with the department or any law enforcement official as is otherwise conferred by the provisions of this subsection upon the person who made the original report.

Id. at (7). These provisions, however, were not in effect until 2001, approximately one year after the events subject to this lawsuit occurred. Thus, we do not reach the issue of the effect of these subdivisions upon Mrs. Draper's claim against Dr. Westerfield.

Dr. Westerfield advances several policy arguments in support of his contention that immunity should be afforded to anyone who in good faith cooperates in the investigation of alleged child abuse. According to Dr. Westerfield, a thorough investigation by DCS of most cases of suspected child abuse requires a medical opinion. DCS will be able to obtain objective medical advice only if medical consultants are granted immunity based upon their cooperation with investigators. Dr. Westerfield maintains that a doctor whose medical opinion is sought by DCS likely will refuse to cooperate if the doctor is subject to liability for providing an objective opinion in good faith. The plain language of Tennessee Code Annotated section 37-1-410(a) (1996), however, does not provide immunity under these circumstances. See City of Cookeville v. Humphrey, 126 S.W.3d 897, 902 (Tenn. 2004) (explaining that where the language of a statute is clear and unambiguous, we must apply the statute in accordance with its plain language). We may not alter or amend a statute. Mooney, 30 S.W.3d at 306 (citation omitted). Furthermore, we may neither question the reasonableness of a statute nor substitute our policy judgments for those of the legislature. Id. at 306-07.

Accordingly, we hold that Tennessee Code Annotated section 37-1-410(a) (1996) does not afford immunity to Dr. Westerfield unless he informed Stanley and Detective Elias that the x-rays and CT scan indicated child abuse. Dr. Westerfield claims that he informed the investigators that the x-rays and CT scan indicated that Bryanna was being abused. Stanley maintains that Dr. Westerfield did not provide her with this information. Thus, the determination of whether Dr. Westerfield reported suspected child abuse and thus is entitled to immunity involves a disputed issue of material fact precluding summary judgment.

## B. Mrs. Draper's Claims

Irrespective of immunity, the parties raise several issues regarding Mrs. Draper's causes of action. Before we address the issues raised by the parties, however, we must first determine whether Mrs. Draper's claim is one of medical malpractice or of common law negligence.

We have previously observed the "subtle" distinction between medical malpractice and common law negligence recognizing that "medical malpractice is but a species of negligence and no rigid analytical line separates the two." Gunter v. Lab. Corp. of Am., 121 S.W.3d 636, 639 (Tenn. 2003) (citations omitted). A negligence claim requires proof of "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." Biscan v. Brown, 160 S.W.3d 462, 478 (Tenn. 2005).

Medical malpractice actions are controlled by Tennessee Code Annotated section 29-26-115 (2000), which incorporates the common law elements of negligence. Gunter, 121 S.W.3d at 639. Pursuant to section 29-26-115(a), the plaintiff must prove: (1) the recognized standard of care; (2) the defendant's failure to act in accordance with the applicable standard of care; and (3) proximate cause in that as a proximate result of the defendant's negligence, the plaintiff suffered injuries that otherwise would not have occurred.

Cases involving health or medical entities do not automatically fall within the medical malpractice statute. Gunter, 121 S.W.3d at 640. Rather, in determining whether an action is for medical malpractice or for common law negligence, the issue is whether the alleged negligent conduct "bears a substantial relationship to the rendition of medical treatment by a medical professional." Id. at 641. If so, the medical malpractice statute applies. Id. If, however, the plaintiff seeks compensation for injuries resulting from negligent conduct not affecting a patient's medical treatment, the claim falls under common law negligence. Id. at 640.

In the present case, Mrs. Draper raised claims in the trial court based upon both medical malpractice and common law negligence in her complaint. In this Court, Mrs. Draper did not appeal the Court of Appeals' determination that no physician-patient relationship was established between Dr. Westerfield and Bryanna. She also does not seek to further her medical malpractice claim. Rather, Mrs. Draper now relies upon her common law negligence claim.

Mrs. Draper seeks relief based upon Dr. Westerfield's conduct in reviewing Bryanna's records and providing information to investigators. Dr. Westerfield's actions do not relate to the medical treatment of Bryanna. Rather, the purpose of Dr. Westerfield's conduct was to provide aid to investigators seeking to protect Bryanna from child abuse. Thus, Mrs. Draper's cause of action is for that of common law negligence.

Our focus in this appeal is upon the first element of a common law negligence action, the existence of a duty. The determination of whether a duty exists is a question of law. Biscan, 160 S.W.3d at 478. In general, all persons have a broad duty to exercise reasonable care to avoid causing foreseeable injury to others. Doe v. Linder Constr. Co., 845 S.W.2d 173, 178 (Tenn. 1992). One does not have an affirmative duty to act for the protection of a third party unless he or she "stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger." Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn. 1997) (citation omitted). Mrs. Draper, however, does not rely upon a "special relationship" in contending that a duty existed. Rather, she maintains that by undertaking to review Bryanna's medical records, Dr. Westerfield assumed a duty to use reasonable care in reviewing the records and reporting his findings and conclusions to the investigators.

We have previously held that "'[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully.'" Biscan, 160 S.W.3d at 482-83 (quoting Stewart v. State, 33 S.W.3d 785, 793 (Tenn. 2000)). By reviewing Bryanna' medical records as part of a child abuse investigation, Dr. Westerfield voluntarily undertook a duty on behalf of Bryanna to use reasonable care in reviewing the medical records and reporting his findings and conclusions to the investigators. If Dr. Westerfield is found not to have reported harm and is therefore not immune from liability, Mrs. Draper's common law negligence action may proceed. Mrs. Draper, however, still bears the burden of establishing the remaining elements of negligence: breach of duty, injury or loss, cause in fact, and proximate cause. See Biscan, 160 S.W.2d at 478.

Finally, Dr. Westerfield contends that irrespective of the issue of immunity, he is not subject to civil liability because Tennessee Code Annotated section 37-1-401, *et. seq.* (1996), entitled "Mandatory Child Abuse Reports," does not create a "private right of action" for failure to report suspected child abuse. Dr. Westerfield cites to Premium Finance Corp. of America v. Crump Insurance Services of Memphis, Inc., 978 S.W.2d 91, 93 (Tenn. 1998), in which this Court discussed the principles for determining whether the legislature intended that a statute provide for an independent statutory right of action. A careful reading of Mrs. Draper's complaint and amended complaints, however, reveals that she did not allege an independent statutory right of action for violation of Tennessee Code Annotated section 37-1-403 (1996). Rather, in addition to the medical malpractice action, Mrs. Draper brought a common law negligence claim against Dr. Westerfield based upon his alleged failure to report suspected child abuse. A statutory right of action and a common law negligence action are two distinct bases of civil liability. See Marquay v. Eno, 662 A.2d 272, 277 (N.H. 1995) (distinguishing between the two causes of action). Moreover, Dr. Westerfield did not raise the "private right of action" issue in his answer to either Mrs. Draper's complaint or her amended complaints or in his motion for summary judgment. The first time that Dr. Westerfield contended that Tennessee Code Annotated sections 37-1-401, *et. seq.* did not create an independent statutory right of action was in his brief to the Court of Appeals. Since Mrs. Draper did not assert an independent statutory right of action, the Court of Appeals erred in addressing the issue.

## CONCLUSION

We conclude that the determination of whether Dr. Westerfield reported harm, thus entitling him to immunity pursuant to Tennessee Code Annotated section 37-1-410(a) (1996), involves a genuine issue of material fact that precludes summary judgment. We further hold that in reviewing Bryanna's medical records, Dr. Westerfield assumed a duty to Bryanna to use reasonable care in reviewing the records and reporting his findings and conclusions to the investigators. Finally, we conclude that the Court of Appeals erred in addressing the issue of whether Tennessee Code Annotated section 37-1-401, *et. seq.* (1996) provided for private right of action because Mrs. Draper did not assert a private right of action in her complaint. Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.

The costs of appeal are taxed to the appellant, Larry H. Westerfield, and his surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE