IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2007 Session

## JERRY FREEMAN, ET AL. v. LEWISBURG HOUSING AUTHORITY

Appeal from the Circuit Court for Marshall County
No. 16580     F. Lee Russell, Judge

No. M2006-01898-COA-R3-CV - Filed February 8, 2008

The trial court granted summary judgment to the defendant public housing authority, dismissing claims by its former employees for retaliatory discharge in violation of the Tennessee Public Protection Act and for constructive discharge based on a racially hostile work environment in violation of the Tennessee Human Rights Act.  Because we find that the employees failed (1) to establish an essential element of a claim for retaliatory discharge or (2) to show that the hostile work environment was racially discriminatory, the judgment of the trial court is affirmed in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the court, in which RILEY ANDERSON, SP.J., joined. WILLIAM B. CAIN, J. not participating.

James L. Harris, Nashville, Tennessee, for the appellants, Jerry Freeman, Marilyn Lopez, and Kristin Courtemanche.

Walter W. Bussart, Lee Bussart Bowles, Lewisburg, Tennessee, for the appellee, Lewisburg Housing Authority.

**OPINION**

**I.**

This case involves claims of wrongful termination and discrimination by three employees of the Lewisburg Housing Authority (LHA or "the Authority"), a governmental low-income housing agency affiliated with the City of Lewisburg.  Plaintiff Jerry Freeman served as executive director of the LHA pursuant to a written contract.  The LHA also employed Plaintiffs Marilyn Lopez as a resident coordinator and Kristin Courtemanche as an occupancy clerk.  Mr. Freeman's contract with the LHA expired in September 2003. Several days prior to the expiration of his contract, Mr.

Freeman was notified that the contract would not be renewed.[1] Upon the expiration of Mr. Freeman's contract, Ms. Lopez and Ms. Courtemanche both submitted letters of resignation, effectively terminating their at-will employment.

Eighteen months later, on March 28, 2005, Mr. Freeman, Ms. Lopez, and Ms. Courtemanche filed a complaint in the Circuit Court of Marshall County against the LHA. They asserted several legal theories related to their alleged job terminations.[2] Mr. Freeman based his claim upon retaliatory discharge in violation of the Tennessee Public Protection Act (TPPA) (also known as the "Whistleblower Statute") which is codified at Tenn. Code Ann. § 50-1-304. He claimed that he had become aware of "various serious or unlawful practices on the part of the LHA," that he had reported these practices to higher authorities, and that no meaningful action was taken by the LHA in response except that that he was terminated in retaliation for making such reports.

There was no specific information whatsoever in Mr. Freeman's initial complaint or in his amended complaint as to the exact nature of the illegal practices to which he referred. In response to interrogatories, he recited a number of incidents involving alleged attempts by some of the LHA board members to use their positions to advance their personal interests or that of their family members and his own response to those attempts.

Ms. Lopez (who is of Hispanic descent) and Ms. Courtemanche (who is Caucasian) complained that some of the African-American tenants behaved in a hostile and threatening way towards them and that the Authority's Board Members did not adequately control that behavior or adequately support them when they complained to the Board about the conduct of those tenants. Their depositions indicate that in contrast to the apparent indifference of the Board Members, Mr. Freeman was protective of the employees under his supervision. Ms. Lopez and Ms. Courtemanche claimed that after Mr. Freeman's employment ceased they no longer felt safe performing their jobs, because "he was the only one standing between us and the residents." Thus, although they voluntarily resigned from their positions, they claimed they were constructively discharged due to a racially hostile work environment created in violation of the Tennessee Human Rights Act (THRA), which is codified at Tenn. Code Ann. § 4-21-101 et seq.

On December 16, 2005, LHA filed a motion for summary judgment. On February 10, 2006, the trial court granted the motion. Its order recited that it had viewed the facts in the light most favorable to the plaintiffs, but that it had failed to find a causal connection between any reporting of illegal activities by Mr. Freeman and the termination of his employment and that the facts alleged by Ms. Lopez and Ms. Courtemanche did not state a *prima facie* case for discrimination under a

---

[1] The minutes of its Board of Commissioners for August 26, 2003 recites that LHA's attorney, Walter Bussart, told the Board that "Mr. Freeman does not wish to continue in his position once his contract expires, for Mr. Freeman wishes to pursue other interests. Mr. Bussart clarified that Mr. Freeman's decision was not a resignation but simply a completion of his employment contract."

[2] Although multiple legal theories were asserted by the parties in their Complaint, we will limit our review to those claims specifically raised by the parties on appeal.

racially hostile work environment claim. The plaintiffs filed a Tenn. R. Civ. P. 59 motion asking the trial court to alter or amend its judgment. The trial court denied the motion. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Advertising & Publishing Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Consequently, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Draper*, 181 S.W.3d at 288; *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). We must determine first whether factual disputes exist and, if so, whether the disputed fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.

To meet the requirements for summary judgment, a defendant moving for summary judgment must, in its filings supporting the motion, either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *Blair,* 130 S.W.3d at 767; *Staples*, 105 S.W.3d at 88-89. If the moving party fails to meet this burden, the burden to come forward with probative evidence establishing the existence of a genuine issue for trial does not shift to the non-moving party and the motion must be denied. *Staples*, 105 S.W.3d at 88-89.

If, however, the moving party successfully negates a claimed basis for the action or establishes an affirmative defense, the non-moving party may not simply rest upon the pleadings. *Staples*, 15 S.W.3d at 88-89. In that situation, the nonmoving party has the burden of pointing out, rehabilitating, or providing new evidence to create a factual dispute as to the material element in dispute. *Staples*, 15 S.W.3d at 88-89; *Rains v. Bend of the River*, 124 S.W.3d 580, 587-88 (Tenn. Ct. App. 2003). A nonmoving party who fails to carry that burden faces summary dismissal of the challenged claim.

### III. RETALIATORY DISCHARGE

The Tennessee Public Protection Act declares in relevant part that "[n]o employee shall be discharged or terminated **solely** for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(a) (emphasis added). Any employee terminated in violation of that part "shall have a cause of action against the employer for retaliatory discharge." Tenn. Code Ann. § 50-1-304(d)(1). To establish a *prima facie* case of retaliatory discharge under that statute, the plaintiff must show (1) his status as an employee; (2) his refusal to participate in, or remain silent about, illegal activities; (3) the employer's discharge of the employee; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination by the employer.[3] *Hill v. Perrigo of Tn.*, No. M2000-02452-COA-R3-CV, 2001 WL 694479, at *3 (Tenn. Ct. App. Jun. 21, 2001) (no 11 Tenn. R. App. P. application filed); *Darnall v. A+ Homecare, Inc.*, No. 01-A-01-9807-CV-00347 at *4, 1999 WL 346225 (Tenn. Ct. App. June 2, 1999) (no 11 Tenn. R. App. filed). We will examine each of these requirements in turn.

It is undisputed that Mr. Freeman was employed by LHA pursuant to a contract. He has also presented proof that he raised objections to several actions proposed by LHA Board Members because he did not believe that they were consistent with HUD regulations, and he has asserted that his objections did not sit well with those Board Members. LHA argues that Mr. Freeman's allegations do not meet the requirement as to "refusal to participate in, or remain silent about, illegal activities." Whether the conduct alleged by Mr. Freeman is within the meaning of "illegal activities" under the statute, *see* Tenn. Code Ann. § 50-1-304(c), is subject to argument. We need not resolve that issue, however, because Mr. Freeman's claim fails for another reason.

To establish a *prima facie* claim under the statute, a plaintiff must show that he was discharged from his employment. Mr. Freeman was not discharged or terminated by his employer under the terms of the statute. In the case of *Howard v. Life Care Centers of America, Inc.,* No. E2004-00212-COA-R3-CV, 2004 WL 1870067 (Tenn. Ct. App., Aug. 20, 2004)(no 11 Tenn. R. App. filed), a doctor whose one-year contract was not renewed when it expired filed suit against his

---

[3]The requirement of an **exclusive** causal relationship between an employee's refusal to participate in or remain silent about illegal activities and his termination by the employer is grounded in the language of the statute which prohibits the discharge of an employee **"solely"** for such reasons. This can be distinguished from the less-stringent requirement for common law claims of retaliatory discharge, where the plaintiff need only show that the refusal was a **"substantial factor"** in the employer's motivation to terminate his employment. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002).

employer for retaliatory discharge. He claimed that the reason his contract was not renewed was because he objected to his employer's attempts to avoid or bypass Medicare regulations. The trial court granted summary judgment to the employer, and we affirmed, noting that

> Tenn Code Ann. § 50-1-304 requires that the employee be "terminated". This would clearly require an act on the part of the employer to end the employment relationship. In this case, the employment relationship ended by operation of the parties' contract and not due to any action on the part of the employer. The employer in this case did not terminate Dr. Howard. His employment contract simply expired. There is no authority in Tennessee which gives an individual the right to sue for failure to renew a contract and we do not deem it appropriate to create such a cause of action in this case.

We see no reason in this case to deviate from our ruling in *Howard v. Life Care Centers of America.* Since termination of employment is an essential element of a claim for retaliatory discharge and Mr. Freeman can not establish that element, the trial court did not err by dismissing his claim on summary judgment.

In its summary judgment order, the trial court found there to be no causal connection between the allegedly illegal activities of the LHA board members and Mr. Freeman's separation from employment. While Mr. Freeman failed to provide proof of such connection,[4] we need not reach that issue in light of our holding that Mr. Freeman's claim must fail because his employment ended with the expiration of his contract rather than by his termination within the meaning of the statute.

## IV. HOSTILE WORK ENVIRONMENT

The stated intent and purpose of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* is to provide for the execution of policies within Tennessee that are consistent with the Federal Civil Rights Acts of 1964, 1968, and 1972, including the prohibition of discrimination in employment, public accommodations and housing. Tenn. Code Ann. § 4-21-101(a)(1). *See also*, *Barnes v. Goodyear Tire and Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000); *Phillips v. Interstate Hotel Corp No. L07,* 974 S.W.2d 680, 683 (Tenn. 1998); *Frye v. St. Thomas Health Services,* 227 S.W.3d 595, 602 (Tenn. Ct. App. 2007).

Tenn. Code Ann. § 4-21-401(a) of the Act states that

It is a discriminatory practice for an employer to:
    (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges

---

[4]Mr. Freeman relies solely upon the bare assertion found in his claim that such a connection exists. There is no evidence in the appellate record, other than the minutes of August 26, 2003, as to the reason or reasons that his contract was not renewed.

of employment because of such individual's race, creed, color, religion, sex, age or national origin; or

  (2) Limit, segregate or classify an employee or applicants for employment in any way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, creed, color, religion, sex, age or national origin.

Both the Federal and State Acts apply to claims of discrimination based upon the existence of a hostile work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, (U.S. 1986); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996). To prevail in a hostile work environment claim based on race, the plaintiff must show (1) membership in a protected class; (2) racially motivated conduct that constituted an unreasonably abusive or offensive work-related environment or which adversely affected the reasonable employee's ability to do his or her job; (3) the employer knew or should have known of the harassment; and (4) the employer failed to respond with prompt and appropriate corrective action. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d at 31-32. A hostile work environment claim is established upon proof of conduct that is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank, FSB*, 477 U.S. at 67 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)).

The deposition testimony of the plaintiffs showed that some of the tenants of the Lewisburg Housing Authority were rude, unruly, demanding, and even threatening. They testified that some tenants referred to Ms. Lopez as "that Spanish bitch," and to Ms. Courtemanche as "that white bitch." However, when Ms. Lopez was asked whether she had ever received "any derogatory racial or gender discriminatory comment from any member of the Board or any superior of yours at the housing program," she answered in the negative. Ms. Courtemanche testified that she told one tenant that she had to get rid of her dog because it was dangerous, and the tenant refused and threatened her. She also explained that there was a sliding glass window between the employees and the tenants which had to be kept open for communication with the tenants, but that one angry tenant attempted to attack her, coming through the window "all the way up to her thighs."

Despite the testimony as to hostility against LHA employees, it is not clear that the hostility was based on race. The key inquiry in a hostile work environment claim based on race "is whether an employee, or a group of employees, of one race has been subjected to disadvantageous terms or conditions of employment to which members of another race are not exposed." *Campbell*, 919 S.W.2d at 32. In this case, Ms. Lopez is Hispanic, Ms. Courtemanche is Caucasian, and Mr. Freeman is African-American. However, according to the deposition of Ms. Lopez, all three LHA employees were treated in a hostile manner by the LHA tenants regardless of race. Ms. Lopez testified:

Q. Your lawsuit is consolidated with the claims of Mr. Freeman and Ms. Courtemanche. Do you have any knowledge regarding their claims?
A. Yes.
Q. What is that?

A. I mean we were all there together all the time so whatever happened to her [Ms. Courtemanche] happened to me in that sense because, you know, we were right there. Same thing with Mr. Freeman, anything that happened to him, happened to us because we were right there.

Q. Are you saying that you and Mr. Freeman and Ms. Courtemanche were all treated the same?

A. I don't know about Mr. Freeman because he could fairly fend for himself. But I know that Ms. Courtemanche and myself did face a lot of trying times in that office.

The THRA only protects qualified individuals against a hostile work environment if the environment is also discriminatory. The record indicates that LHA's problem tenants were hostile to all LHA employees regardless of their race. The Sixth Circuit has stated that "it is important to distinguish between harassment and discriminatory harassment in order to 'ensure that Title VII does not become a general civility code.'" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (U.S.1998)).

Further, even if it could be proved that the hostile work environment that the plaintiffs faced was based on racial discrimination, they have not made any claims that the LHA Board or their supervisors acted in a discriminatory way. The hostile work environment they allegedly faced was created by tenants of the LHA. Tenn. Code Ann. § 4-21-401 specifically refers to discriminatory practices by an employer, but makes no reference at all to discriminatory action by clients or customers of the employer, or by other third parties. We can find no evidence in the record of discriminatory conduct by the LHA or by its officers.

Plaintiffs cite the case of *Galdamez v. Potter,* 415 F.3d 1015, 1022 (Ninth Cir. 2005), to support their argument that a hostile work environment created by third parties may be actionable. In that case, a postmaster of Hispanic origin in a small Oregon town claimed that postal customers created a hostile work environment because of her race and that her supervisors did nothing to support her against their insults and threats. The court in that case ruled that an employer could be held liable for the acts of third parties where it ratifies or condones the conduct by failing to investigate and remedy it after learning of it.

Ms. Lopez alleges that one of the tenants who was abusive to her told her that she was backed by a board member, and that it didn't matter what she said or did. She argues that the tenant's statement shows that the Board ratified her action, and thus that the Board should be held liable for allowing a racially hostile work environment to exist. We note, however, that the *Galdamez* case is not controlling law in this jurisdiction; to the best of our knowledge, no court in the Sixth Circuit (including Tennessee) has adopted its reasoning.

Further, the facts of the *Galdamez* case differ in some important respects from the case before us. The Post Office was supportive of a white postmaster who faced hostility from the citizens of another rural Oregon town, but did not come to the support of Ms. Galdamez when she faced similar hostility. Instead, they placed her on administrative leave because of the complaints from the community. In the present case, the LHA did not discriminate against the employees and did not

take any sort of adverse action against them because of complaints by the tenants. As we noted above, Ms. Lopez and Ms. Courtemanche were not discharged by the LHA, but resigned their positions after Mr. Freeman's contract expired.

In sum, we can find no evidence of discriminatory conduct on the part of the FHA which satisfies the requirements of Tenn. Code Ann. § 4-21-401(a). We accordingly affirm the trial court's decision to grant LHA's motion for summary judgment on Ms. Lopez and Ms. Courtemanche's discrimination claim.

<h2 style="text-align:center">V.</h2>

We affirm the judgment of the trial court. Remand this case to the Circuit Court of Marshall County for any further proceedings necessary. Tax the costs of appeal against the appellants, Mr. Freeman, Ms. Lopez, and Ms. Courtemanche.

_____
PATRICIA J. COTTRELL, P.J., M.S.