IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 19, 2007 Session

## MILAN BOX CORPORATION v. DONNA HARDY, ET AL.

**Direct Appeal from the Circuit Court for Gibson County**
**No. 8076    Clayburn Peeples, Judge**

_____

**No. W2006-02478-COA-R3-CV - Filed September 26, 2007**

_____

Plaintiff Milan Box filed this lawsuit against former employee Donna Hardy and her husband, Billy Hardy, alleging fraud, embezzlement, conversion, and unjust enrichment. During discovery the Hardys submitted responses to written interrogatories, but subsequently asserted their fifth amendment rights against self-incrimination during deposition and moved the court to stay litigation pending criminal proceedings. The Hardys subsequently withdrew the motion to stay; nevertheless, the trial court denied the motion to stay when the Hardys failed to execute deeds of trust to real property in favor of Milan Box as security. The trial court granted Milan Box's motion for summary judgment, and the Hardys appeal. We affirm summary judgment against Donna Hardy but modify the award of damages, reverse the award of summary judgment against Mr. Hardy, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part as Modified; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J. and DAVID G. HAYES, SP. J., joined.

C. Timothy Crocker, Michael A. Carter and Daniel E. King, Jackson, Tennessee, for the appellants, Donna Hardy and Billy Hardy.

M. Taylor Harris, Jr. And W. Kerby Bowling, Milan, Tennessee, for the appellee, Milan Box Corporation.

**OPINION**

This appeal arises from a complaint filed in the Circuit Court for Gibson County in April 2005 by Plaintiff/Appellee Milan Box Corporation ("Milan Box") alleging that its former employee, Defendant Donna Hardy (Ms. Hardy), embezzled funds in excess of $600,000, and that she did so with the knowledge and consent of her husband, Defendant Billy Hardy (Billy Hardy; collectively, "the Hardys"). During discovery, the Hardys provided sworn written answers to interrogatories, but

subsequently moved the court to stay proceedings pending a criminal investigation and asserted their Fifth Amendment rights against self-incrimination when deposed by Milan Box. The trial court ordered the Hardys to execute deeds of trust in favor of Milan Box as security pending the stay, which the Hardys failed to do. The trial court accordingly denied the stay notwithstanding the Hardys' motion to withdraw their motion to stay. Milan Box moved for summary judgment, asserting there were no genuine issues of material fact where it offered evidence of the Hardys' culpability and where the Hardys "refusal to answer [was] additional evidence of their liability as testified by Plaintiff's witness." The trial court granted Milan Box's motion for summary judgment, refusing to consider the Hardys' affidavits attached to their response to summary judgment. The Hardys filed a timely notice of appeal to this Court. We affirm against Ms. Hardy as modified, reverse summary judgment against Mr. Hardy, and remand.

### *Issues Presented*

On appeal, the Hardys present the issues as follows:

(1)     The trial court erred in refusing to consider Donna Hardy's Response to Interrogatories when making its decision on Plaintiff's Motion for Summary Judgment.

(2)     The trial court erred in refusing to consider the Affidavits of Donna Hardy and Billy Hardy when making its decision on Plaintiff's Motion for Summary Judgment.

(3)     The trial court erred in granting Plaintiff a summary judgment.

    (A)     The trial court erred in granting Plaintiff a summary judgment against Defendants as the Plaintiff's claims, by their nature, were not appropriate for disposition on summary judgment.

    (B)     The trial court erred in granting Plaintiff a summary judgment against Donna Hardy and Billy Hardy as Plaintiff failed to carry its burden to establish that no genuine issues of material fact existed.

    (C)     The trial court erred in granting Plaintiff a summary judgment against Defendant Billy Hardy because Plaintiff failed to carry its burden to establish that no genuine issues of material fact existed in relation to its claim against Defendant Billy Hardy.

    (D)     Even assuming Plaintiff carried its burden to establish that no genuine issues of material fact existed, the trial court erred in granting Plaintiff a summary judgment against Defendants because Defendants

established there were indeed genuine issues of material fact to be determined by the trier of fact.

### *Standard of Review*

Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party moving for summary judgment must affirmatively negate an essential element of the nonmoving party's claim, or conclusively establish an affirmative defense. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588. We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

### *Analysis*

We begin our analysis by noting that, as characterized by the parties, this lawsuit implicates the effects on a civil action of a defendant's assertion of the protection against self-incrimination provided by the Fifth Amendment of the United States Constitution.[1] Milan Box urges us to affirm the trial court's award of summary judgment in its favor, asserting the Hardys' response to its motion for summary judgment failed to address "a single one of the specific, documented findings of wrongdoing in the Daniels [independent audit] Report." Milan Box further submits that the Hardys' reliance on the Fifth Amendment during deposition, including their refusal to provide deposition testimony regarding the truthfulness of their answers to interrogatories, "created evidentiary presumptions that they conspired to embezzle the money from Milan Box . . . ." The Hardys, on the other hand, assert the trial court erred by refusing to consider their response to interrogatories,

---

[1]The Fifth Amendment provides:

Amendment V. Grand Jury Indictment for Capital Crimes; Double Jeopardy; Self-Incrimination; Due Process of Law; Just Compensation for Property

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V

provided under oath before they learned of the criminal investigation, when granting Milan Box's motion for summary judgment. They further assert that although the decision to invoke Fifth Amendment rights may result in a negative inference against them, case law supports their assertion that the trial court failed to engage in a balancing analysis when it refused to consider their answers to interrogatories and affidavits denying Milan Box's allegations. They also assert that, because they gave Milan Box notice of their intent to invoke the Fifth Amendment pending a ruling on their motion to stay before Milan Box took their depositions, if Milan Box was prejudiced by their assertion it was prejudiced as a result of its own actions. The Hardys also submit that they subsequently gave notice that they would provide deposition testimony without asserting their Fifth Amendment rights, and that summary judgment was inappropriate where Milan Box failed to carry its burden to demonstrate that no genuine issues of material fact existed where the Hardys' affidavits and answers to interrogatories raised an issue of fact and where their assertion of Fifth Amendment rights created only an inference and not a presumption sufficient for the purposes of summary judgment.

We note, as an initial matter, that a defendant's assertion of the constitutionally protected right against self-incrimination in a civil action does not raise a presumption of culpability. Rather, unlike a criminal action, where no inference of guilt may be drawn from a defendant's refusal to testify, in a civil action the trier of fact may draw an adverse inference against a party "when they refuse to testify in response to probative evidence offered against them[.]" *Mitchell v. U.S.*, 526 U.S. 314, 328, 119 S.Ct. 1307 (1999)(quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). The United States Supreme Court has noted:

> In ordinary civil cases, the party confronted with the invocation of the privilege by the opposing side has no capacity to avoid it, say, by offering immunity from prosecution. The rule allowing invocation of the privilege, though at the risk of suffering an adverse inference or even a default, accommodates the right not to be a witness against oneself while still permitting civil litigation to proceed. Another reason for treating civil and criminal cases differently is that "the stakes are higher" in criminal cases, where liberty or even life may be at stake, and where the government's "sole interest is to convict."

*Id.* (quoting *Baxter*, 425 U.S., at 318-319, 96 S. Ct. 1551).

Despite the considerable arguments presented by the parties with respect to the effect of the Hardys' invocation of their Fifth Amendment rights in this case, upon review of the record we find that little discussion of the implications of the Fifth Amendment is necessary to our disposition of this matter on appeal. Rather, as Milan Box submits, the Hardys' response to Milan Box's motion for summary judgment in the trial court was insufficient to demonstrate the existence of genuine issues of material fact. We therefore turn to the facts and procedural history giving rise to this appeal.

Ms. Hardy worked as a bookkeeper and accountant for Milan Box from 1981 to 2004. She also worked as a bookkeeper for The Dedmon Company, which owned the property on which Milan Box's manufacturing facility was located. She had check-writing authority with The Dedmon Company and at some point prior to 2004 was given check-writing authority at Milan Box. In 2002, The Dedmon Company merged into Milan Box and ceased to exist as a separate entity. In its April 2005 complaint, Milan Box alleged Ms. Hardy had failed to close The Dedmon Company bank accounts, had transferred funds from Milan Box to The Dedmon Company without authorization, and had embezzled those funds by writing checks to herself from The Dedmon Company. Milan Box further alleged that the embezzled funds were used by the Hardys to purchase or to increase the equity in real and personal property located in Gibson County and Henry County. Additionally, Milan Box alleged the Hardys maintained joint bank accounts at Union Planters Bank, AmSouth Bank, and BanCorp South, and that if Milan Box or The Dedmon Company opened an account with a new bank, the Hardys also would establish an account with that bank.

According to Milan Box's complaint, audits revealed that Ms. Hardy concealed her embezzlement activity by "doctoring the books and records of Milan Box." Milan Box alleged Ms. Hardy transferred funds from Milan Box's accounts into The Dedmon Company's account, and then wrote checks to herself from The Dedmon Company. Milan Box asserted Ms. Hardy

> made false entries on the books of Milan Box in the form of manual journal entries . . . enter[ing] a credit (i.e. reduction) of the cash account for the check written or money transferred. She made offsetting debits and/or credits to other accounts which generally had no relationship to the cash transaction.

Milan Box further asserted that Ms. Hardy altered bank statements that were returned to her as plant accountant for Milan Box; that she falsified monthly and quarterly financial statements; that she falsified tax returns; and that she made false representations to Crain and Company, the independent accounting firm which audited Milan Box during the relevant period and which apparently failed to detect Ms. Hardy's alleged activities.

Milan Box submitted it discovered Ms. Hardy's activities during the course of a 2004 legal audit of its Human Resources and management processes and functions. According to Milan Box, at the time of the audit, Ms. Hardy received a salary of $42,000 per year and was overseeing all accounting functions and also performing some human resources and management duties. Following an audit interview at which Ms. Hardy complained of the work load, she was informed that some of her accounting duties would be transferred to outside independent accountants. Milan Box further asserted that, shortly thereafter, Ms. Hardy complained that she did not like the direction in which the company was moving, and stated that she had another position and would leave Milan Box following the regular year-end audit. Milan Box alleged Ms. Hardy "demanded" $150,000 in severance benefits, as well as a "release with respect to all accounting matters including anything relating to the year-end audit." According to Milan Box, Ms. Hardy's behavior "raised a red flag,"

and an independent CPA was engaged to perform an investigation. Milan Box attached a copy of the CPA's investigation results to its complaint. According to the investigator, for fourteen years Ms. Hardy

> wrote numerous unauthorized checks to move money from Milan Box bank accounts to The Dedmon Company bank accounts by utilizing a facsimile stamp of the signatures of corporate officers of Milan Box. Additionally, Donna Hardy used transfers (other than checks) to move funds from various bank accounts of Milan Box into bank accounts owned by The Dedmon Company.

In its complaint against the Hardys, Milan Box alleged fraud, embezzlement and defalcation while acting in a fiduciary capacity within the meaning of 11 U.S.C. §§ 523(a)(2)(B) and 523 (a)(4) by Ms. Hardy. It also alleged unjust enrichment by the Hardys, and asserted that Mr. Hardy was aware of and consented to Ms. Hardy's alleged activities. Milan Box prayed for a joint and several judgment awarding restitution, prejudgment interest and costs, and punitive damages. It further sought equitable liens and constructive trusts against real and personal property shown to have been purchased with embezzled funds or in which equity was increased by the use of those funds. On May 6, Milan Box filed a motion for restraining order and temporary injunction prohibiting the Hardys from transferring or encumbering real property in Gibson and Henry Counties without court approval. Following a hearing, the trial court granted this motion on May 31, 2005, and required Milan Box to post an indemnity bond in the amount of $50,000. Milan Box posted bond on June 2, 2005.

The Hardys answered and counterclaimed on May 20, denying allegations of wrong-doing and asserting, "the fact that Crain & Company has not been made a party to this lawsuit is strong evidence that this action is nothing more than the exercising of a personal vendetta against Mrs. Hardy, resulting from her willingness to consider pursuing an Equal Employment Opportunity . . . claim against Milan Box." Ms. Hardy admitted to voicing concerns about the direction Milan Box was taking, stating,

> [m]ore specifically, Mrs. Hardy expressed her concerns that she, for a considerable amount of time, had been made the unfair target of harassment by a superior at Milan Box. Mrs. Hardy admits that if relief from said harassment was not granted by those in control of Milan Box, she intended to pursue another job opportunity.

She further asserted her request for a release relative to accounting matters was a standard practice in the field, and that the fact that Crain and Company had not uncovered any evidence of wrongdoing in its annual audits was evidence that she had not engaged in such wrongdoing as alleged by Milan Box. Ms. Hardy further asserted that although she did not initially have check-writing authority for Milan Box, she had authority to utilize the signature stamps of those who did. Ms. Hardy counterclaimed for negligent infliction of emotional distress, abuse of process, and spoliation of evidence. In her counterclaim, Ms. Hardy asserted Milan Box's action against her was designed to attack her reputation and credibility where, in December 2004, she had advised Milan Box's legal

-6-

counsel that she was considering an Equal Opportunity Employment claim against Milan Box and where she believed Milan Box was on "probation" for previous Equal Opportunity violations. She further asserted Milan Box's action was designed to intimidate her from pursing an Equal Opportunity claim and from publicly disclosing business practices of Milan Box. She sought damages of $250,000 and punitive damages of an additional $250,000 for each claim. Milan Box answered in July 2005, denying the allegations set forth in Ms. Hardy's counterclaim and moving for dismissal of the counterclaims.[2]

On December 6, 2005, the Hardys filed their response to Milan Box's written interrogatories. In the response, Ms. Hardy stated that, in addition to her compensation for bookkeeping services, she had written checks to herself from The Dedmon Company account during the 1995-2004 period totaling $225,000. She stated that she had written no more than ten checks per year, in an amount of less than $5,000 per check. She further stated that these checks were for repayments of loans with interest at 18% per annum. Ms. Hardy denied altering any bank statements or checks, and denied misrepresenting checks or transfers in the cash disbursement journal as transfers to the IRS. She stated that the "loan payment to her was not recorded on any financial record of Dedmon Company because the money paid in was equal to the money paid back to Donna Hardy for loan repayment from said account." In response to an interrogatory regarding whether and by whose authority Ms. Hardy signed a 2004 credit memo in the amount of $81,000 transferring funds from a Milan Box account at Union Planters Bank, Ms. Hardy answered:

> Yes Donna Hardy did sign an $81,000 credit memo dated 11/12/04. There was no specific written authority. She did have as a part of her job responsibilities the authority to transfer funds and had transferred large amounts in the past. She was also authorized to sign on the account. . . . Donna Hardy was aware that Tony T. Hamaguchi, an employee of the company, was accessing bank records that he was not authorized to review. The purpose of the transfer was to expose his unauthorized activities to the president of the company.

Ms. Hardy likewise stated that she had written a document reflecting personal debt in the amount of $81,000 in order to expose the unauthorized accessing of bank records. Ms. Hardy objected to and refused to answer interrogatories pertaining to her Equal Opportunity allegations, referencing instead the complaint filed with the Equal Opportunity Commission. Attached to the answer to interrogatories included in the record are the Hardys' bank records. Also attached are copies of several sheets of paper which the Hardys assert are loan agreements signed by Barbara Williams, a former employee who was apparently deceased at the time this lawsuit was filed. The Hardys contend Ms. Hardy made loans to Milan Box totaling $86,000. These documents are written on

---

[2]The Hardys did not respond to Milan Box's motion to dismiss their counterclaims, and the trial court ultimately treated Milan Box's motion to dismiss has a motion for summary judgment. At the hearing of the matter in June 2006, the Hardys orally moved for a voluntary nonsuit of their counterclaims. The trial court denied the motion in light of Milan Box's pending motion for summary judgment, and awarded summary judgment to Milan Box. The trial court's order with respect to the Hardys' counterclaims has not been raised as an issue on appeal.

plain paper, are undated, contain no provision for interest, and indicate that repayment is to be made "on an as needed basis."

Following a telephone conference and upon the Hardys' oral motion, on December 9 the trial court entered an order substituting counsel for Hardys and continuing depositions scheduled for November 10 and 11 until December 16, 2005. On December 15, 2005, the Hardys filed a motion to stay proceedings when they discovered an on-going criminal investigation of the matter. Additionally, counsel for the Hardys advised counsel for Milan Box of the motion by fax, and stated that he had advised the Hardys to "exercise their Fifth Amendment right pending a ruling by the Court concerning the attached Motion." Milan Box proceeded with the scheduled depositions, however, and the Hardys asserted their Fifth Amendment rights in response to all questions relevant to Milan Box's claim, including questions concerning the Hardys' bank accounts and property; Ms. Hardy's responsibilities at Milan Box; and regarding their answers to interrogatories, including the question: "Were you telling the truth when you swore under oath to the answers to interrogatories which have been identified as an exhibit."

In January, the trial court granted the Hardys' motion to stay "subject to the precondition that Defendants sign for recording deeds of trust with customary <u>standard</u> provisions upon their real property interest in Gibson and Henry Counties to secure a judgment, if one is rendered against one or both of them." The court further ordered:

> To implement this order, the parties shall attempt to agree upon language for the deeds of trust and any related documents including appropriate <u>special</u> terms consistent with this order. If agreement is not reached and the deeds of trust not recorded by March 15, 2006, the parties shall file with the Court by March 17, 2006 documents that they propose, together with any explanation of their proposals, and this Court will enter an order specifying language to be used. If within five (5) days after such order Defendants have not signed and delivered to Plaintiff's attorney for recording the documents approved by this Court, then there shall be no stay of this case, and Defendants' motion shall be denied.

On March 24, 2006, the court entered an order stating that, it appearing that the parties had not agreed upon the form of a deed of trust, a form deed attached to the order would "be used for conveyance by Defendants of their properties[.]" The trial court stated that if the Hardys did not sign and deliver the deeds of trust within five days of receipt by counsel, their motion to stay would be denied. The Hardys did not execute the deeds of trust.

On April 3, 2006, Milan Box filed a motion for summary judgment and statement of undisputed facts. On April 17, 2006, the Hardys filed a motion to alter or amend, stating that they no longer sought a stay of proceedings. The motions were set to be heard on June 12, 2006. However, on April 17, the trial court denied the Hardys' motion to stay on the basis of the Hardys' failure to execute the deeds of trust in favor of Milan Box as ordered by the court. On May 23, the Hardys filed a "Notice of Willingness to Give Deposition Testimony." Although, in their brief to

this Court, the Hardys assert the notice was filed "in good faith, to make Plaintiff and the trial court aware of Defendants' willingness to answer Plaintiff's discovery questions without asserting their Fifth Amendment rights against self-incrimination," their May notice in the trial court simply stated that they "[were] willing to provide testimony by deposition if desired by Plaintiff."

Hardys responded to Milan Box's motion for summary judgment on June 5, and Ms. Hardy and Mr. Hardy each filed affidavits denying the several allegations of Milan Box. In their response to the motion for summary judgment, the Hardys referenced these affidavits to assert genuine issues of material fact. On June 7, Milan Box filed a motion to strike the Hardys' affidavits. In their memorandum of law, Milan Box asserted the Hardys were engaging in tactics intended only to delay the proceedings. Milan Box quoted *Securities and Exchange Commission v. Benson*, 657 F. Supp 1122 (S.D.N.Y 1987), for the proposition that, by invoking their Fifth Amendment rights, the Hardys "forfeited the right to offer evidence disputing the plaintiff's evidence or supporting their own denials." They further quoted *Trafficiant v. Commissioner of Internal Revenue Service*, 884 F.2d 258, 265 (6th Cir. 1989), for the proposition that the Hardys should be prohibited from introducing evidence regarding the matters with respect to which they had asserted Fifth Amendment protections. Milan Box quoted *Trafficiant v. Commissioner of Internal Revenue Service*, 884 F.2d 258, 265 (6th Cir. 1989), for the proposition that

> Such limits are properly within the scope of cases holding that a party to civil litigation or other non-criminal proceedings may encounter costs imposed in exchange for the assertion of the Fifth Amendment privilege as long as they are not so high as to force abandonment of the privilege.

The trial court heard the matter on June 12. On June 23, 2006, the trial court entered its order awarding summary judgment to Milan Box and entering judgment in the amount of $549,823 plus prejudgment interest in the amount of $371,836. In its order, the trial court stated that, having asserted their Fifth Amendment rights at the December 2005 deposition, "the Hardys should not now be allowed to prejudice Milan Box by asserting defenses to the motion for summary judgment by their affidavits or by reference to the prior answers to written interrogatories, which documents shall not be considered by the Court[.]" The trial court further stated, "the Hardy[s'] response to Milan Box's summary judgment motion in any event failed to set forth or add any specific facts showing that there is a genuine issue for trial[.]"

We agree with the trial court that the Hardys' affidavits do nothing more than reiterate the denials asserted in their answer and do not add to the factual evidence in the record. The affidavits do not raise issues of material fact. Accordingly, we find it unnecessary to address whether the trial court erred by refusing to consider the Hardys' affidavits where the Hardys previously had invoked the protections of the Fifth Amendment.

Therefore, in light of the foregoing, the issues, as we perceive them, are 1) whether the Hardys' response to Milan Box's motion for summary judgment demonstrated genuine issues of material fact; 2) if the Hardys' response to Milan Box's motion for summary judgment pointed the

court to genuine issues of material fact, did the trial court err by refusing to consider the Hardys' responses to written interrogatories, submitted under oath and prior to the assertion of Fifth Amendment rights; and 3) if the trial court erred by refusing to consider the responses to interrogatories, do the responses evidence a genuine issue of material fact. We accordingly turn to whether the trial court erred by awarding summary judgment in this case.

### *Answers to Interrogatories*

We begin our discussion of the trial court's judgment with Rule 56 of the Tennessee Rules of Civil Procedure, which governs summary judgment in Tennessee. Rule 56.04 provides:

> The motion shall be served at least thirty (30) days before the time fixed for the hearing. The adverse party may serve and file opposing affidavits not later than five days before the hearing. Subject to the moving party's compliance with Rule 56.03, the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Upon request, the trial court shall state the legal grounds upon which the court grants the motion, which shall be included in the order reflecting the court's ruling. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Tenn. R. Civ. P. 56.04.

Scholars have described summary judgment as being "in effect an accelerated motion for directed verdict made before trial on the basis of evidence on the record at that time, rather than on the basis of evidence admitted at trial." Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 9-4(b) (2ⁿᵈ ed. 2004)(footnotes omitted). When, as here, the party moving for summary judgment has the burden of persuasion at trial,

> his initial task under Rule 56 of showing that he is entitled to a judgment as a matter of law means that he must produce evidence for all unadmitted elements of the claim or defense, and the evidence must be such that, if uncontradicted, no reasonable jury could find against him and he would be entitled to a directed verdict at trial. Thus, the summary judgment movant with the burden of persuasion at trial must satisfy not only the burden of production for all essential elements of his claim or defense, but must do so "beyond peradventure." This burden is a formidable one because doubts as to the existence of the facts upon which the movant relies to establish the claim or defense will be resolved against him.

*Id.* § 9-4(m)(footnotes omitted). Accordingly, "while summary [judgment] procedures originally were designed for claimants, summary judgment has become primarily a defendant's motion. A

plaintiff-movant will not achieve a final summary judgment unless he establishes both the elements of his claim and the invalidity of all asserted defenses." *Id.* (footnotes omitted). Rule 56.04, moreover, unequivocally provides that answers to interrogatories which are properly part of the record are before the court for its consideration when determining whether to grant a motion for summary judgment.

In this case, the trial court first stated that it would not consider the Hardys' responses to interrogatories and then stated that "it further appear[ed] that the Hardys' response to Milan Box's summary judgment motion in any event fails to set forth or add any specific facts showing that there is a genuine issue for trial." We accordingly turn to the Hardys' response to Milan Box's motion for summary judgment.

The Tennessee Rules of Civil Procedure provide:

> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.

> Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

> In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

> If the non-moving party has asserted additional facts, the moving party shall be allowed to respond to these additional facts by filing a reply statement in the same manner and form as specified above.

Tenn. R. Civ. P. 56.03.

This Court has repeatedly emphasized that a party opposing a motion for summary judgment must affirmatively oppose the motion and may not simply rest on its pleadings. *E.g., Holland v.*

*Memphis*, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003) *(*perm app. denied). Such opposition is made by pointing to the evidence in the record which demonstrates disputed material facts. *Id.* Additionally, the parties' statements of material fact on a motion for summary judgment are

> intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

*Id.* (quoting *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App.2001)(perm app. denied)(quoting with approval, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir.1994))). Although the trial court has discretion to waive the requirements of the rule where appropriate, it may also refuse to consider the factual assertions of a non-complying party even where such facts are ascertainable by the record. *Id.* Accordingly, the material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party. *Id.*

In this case, Milan Box's statement of undisputed facts included references to Ms. Hardy's deposition, Mr. Hardy's deposition, the affidavit of George Franklin Dedmon, and the affidavit of Cleston B. Daniels, CPA. In its statement, Milan Box asserted, *inter alia*, that Ms. Hardy was the plant accountant for Milan Box with sole responsibility for all accounting functions from 1990 to December 2004; that she was also in charge of accounting functions for The Dedmon Company; that over a period of years Ms. Hardy made unauthorized transfers in the amount of $601,335 from the bank accounts of Milan Box to the bank accounts of The Dedmon Company; that, using the funds transferred to The Dedmon Company accounts, Ms. Hardy embezzled $549,823 from The Dedmon Company accounts; and that, in their depositions, Ms. Hardy and Mr. Hardy refused to answer questions regarding whether Ms. Hardy had made unauthorized transfers or embezzled funds on the grounds that the answer might be incriminating. In the affidavit attached to Milan Box's motion, Cleston Daniels stated that the audit performed by himself and his staff documented unauthorized transfers in the amount of $601,335 made over a period of fourteen years from Milan Box to The Dedmon Company. He further stated that his staff was

> able to recover from banks copies of processed checks totaling $312,269 that were missing from The Dedmon Company bank statements and had been written by Donna Hardy to herself. Most if not all were deposited by her into joint bank accounts of Billy Hardy and Donna Hardy. Copies of checks for the remaining $237,554 of embezzled funds were not recoverable from bank records. Were they recoverable, consistent with the pattern for the $312,269 of missing checks we did recover we are reasonably sure they would show the payee as Donna Hardy or 'cash'. Returned checks paying all legitimate accounts payable of The Dedmon Company were accounted for and available. There is no other explanation for loss of the remaining

$237,554 for which returned checks could not be recovered than theft by Donna Hardy.

In their response to Milan Box's motion, the Hardys referenced the affidavits filed with their response. In her affidavit, Ms. Hardy denied the allegations that the transfers were unauthorized and denied any wrongdoing, but provided no factual assertions with respect to the checks uncovered by the independent investigator. She also did not indicate by whose authority the funds were transferred out of Milan Box or the payments from The Dedmon Company made to her. In her response and affidavit, Ms. Hardy also asserted that other employees and independent accountants handled some of the accounting functions at Milan Box. Mr. Hardy asserted in his affidavit that he had not conspired with Ms. Hardy to embezzle funds and that, to the best of his knowledge, Ms. Hardy had not stolen or embezzled funds.

The Hardys did not refer the trial court to their December 2005 responses to written interrogatories in their response to the motion for summary judgment. Additionally, the Hardys responded to Milan Box's statements referencing the Hardys' December 2005 depositions by objecting to Milan Box's reliance on the depositions on the grounds that they had not been made part of the record as required by Tennessee Rule of Civil Procedure 56.03. However, we note that the depositions were stamped filed by the trial court on March 20, 2006, and, accordingly, appear to have been part of the record before the trial court. The Hardys failed to otherwise controvert Milan Box's statement of facts.

We must agree with Milan Box that the Hardys' response to the motion for summary judgment failed to point to any fact controversy with respect to Ms. Hardy's unauthorized transfer of funds or to the unauthorized writing of checks to herself. Ms. Hardy simply never denied writing the checks at issue; she did not suggest that the transfers from Milan Box to The Dedmon Company were authorized by anyone at either company; she did not provide any fact that would indicate that she was authorized to make the payments to herself that are at issue here. Additionally, the Hardys made no reference to their answers to written interrogatories in their response to Milan Box's motion for summary judgment. Thus, we cannot say the trial court erred by failing to consider the answers to interrogatories.

Although, in light of the foregoing, we affirm an award of summary judgment against Ms. Hardy, our analysis does not end here. We observe that Milan Box documented unauthorized transfers in the amount of $601,335 made over a period of fourteen years from Milan Box to The Dedmon Company, and unauthorized checks written to Ms. Hardy in the amount of $312,269. Transferred funds in the amount of $237,554 were simply unaccounted for by the independent CPA/investigator. We do not believe the statement of the investigator that he is "reasonably sure" that these funds were, in fact, transferred to Donna Hardy because he cannot otherwise explain their loss is sufficient, at the summary judgment stage, to justify entry of a judgment against Ms. Hardy in this amount. As noted above, as the Plaintiff/Movant, Milan Box bears the burden of proof and the burden of persuasion "beyond peradventure" to demonstrate first, that the funds were transferred from Milan Box to The Dedmon Company without authorization and, second, that Ms. Hardy

ultimately transferred the funds to herself without authorization. Milan Box has carried this burden with respect to funds in the amount of $312,269. The whereabouts of the remaining funds in the amount of $237,554 remains unproven and summary judgment is not appropriate with respect to this amount.

We similarly do not believe Milan Box carried its burden of proof with respect to the allegations against Mr. Hardy. Mr. Hardy denied any knowledge of the unauthorized activity or embezzlement. The only proof in the record offered by Milan Box with respect to Mr. Hardy is that he and Ms. Hardy had joint bank accounts; signed tax returns which do not indicate the receipt of the funds at issue; owned property jointly; and Mr. Hardy's refusal to answer questions during the December 2005 deposition. These facts are uncontroverted. Although we acknowledge the negative inference which may be drawn from Mr. Hardy's assertion of his Fifth Amendment rights, in light of the entire record in this case, we cannot say Milan Box has carried its burden of proof that Mr. Hardy participated or acquiesced in Ms. Hardy's unauthorized activity for the purposes of summary judgment. In the absence of documentary evidence, or in light of scant documentary evidence, the determination of whether Mr. Hardy knew of or acquiesced in Ms. Hardy's activities necessarily is largely a matter of credibility for the trier of fact pursuant to a trial on the merits.

### *Holding*

In light of the foregoing, summary judgment against Mr. Hardy is reversed. Summary judgment in favor of Milan Box against Ms. Hardy is affirmed as modified. We modify the judgment in favor of Milan Box from $549,823 to $312,269, plus interest, and remand to the trial court for a recalculation of interest and for entry of judgment consistent with this opinion. Remaining issues are pretermitted as unnecessary in light of this holding. Cost of this appeal are taxed one-half to the Appellee, Milan Box Corporation, and one-half to the Appellants, Donna Hardy and Billy Hardy, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-14-